## STATE OF IOWA V. HENRY EIFERT, Appellant.

**Fraudulent Banking.** A banker's son and employe received a deposit when the insolvency of the bank was known and an hour or two before it finally closed. He received this deposit contrary to a telephone message from the banker to take no more deposits. When the banker reached home, he having knowledge that the deposit had been received, made no effort to, and failed to return it, and four days later included same in a general assignment for the benefit of his creditors. *Held,* the banker himself is guilty of the offense of receiving and accepting a deposit knowing himself to be insolvent.

**TRUST FUND.** It is no defense that the depositor might pursue the deposit as a trust fund.

**RATIFICATION AND ACCEPTANCE.** On trial of a banker for receiving deposits when insolvent, it is proper to instruct that, though the deposit was received against defendant's orders, if, on learning that it had been received, he placed it among the funds of the bank, he "knowingly accepted and received" it within the statute. Such instruction rests the acceptance on defendant's own acts, not on the ratification of the acts of others.

**INDICTMENT.** An indictment for fraudulent banking which charges that the banker accepted a deposit from a person named, sufficiently states who was injured, and the owner of the deposit. Code, section 4305.

**Cross-Examination.** On trial of an indictment of a banker for receiving money when insolvent, where defendant, to show want of connection with the transaction, testified that, on the morning of the day that the deposit was made, he left the town where his bank was located, and went to W., after promising to telephone his son, left in charge of the bank, if things did not look favorable, not to receive deposits, and that he sent that message, the court was not required to confine the cross-examination to what defendant did at W. It was proper to cross-examine as to any matter which tended, more fully, to disclose whether the want of connection asserted, existed.

**SAME:** *Waiver.* Where, on cross-examination, defendant is required, over objection, to testify to certain facts, he waives any error

committed in overruling the objection by afterward testifying to the same facts, without objection.

**Instructions.** An instruction on trial of a banker for receiving deposits when insolvent, that it is enough that the deposit, though not received by him personally, was received under his authority, is not error, though the evidence is, that it was received against his order, where such charge is but part of the instruction, and aids in making plain a pertinent charge following, as to the defendant's accepting the deposit after it had been so received.

Robinson, J., dissenting.

*Appeal from Bremer District Court.*—Hon. P. W. Burr, Judge.

## Thursday, December 12, 1895.

The defendant was indicted and convicted of fraudulent banking, and sentenced to be confined in the state penitentiary for two years and six months, and to pay costs. He appeals.—*Affirmed.*

*Gibson & Dawson* for appellant.

The indictment does not in a specific or other manner aver or state whom the money alleged to have been deposited belonged to, or who was the owner of the same, or who was entitled to the possession of said money.

*State v. McConkey,* 20 Iowa, 576; 1 Wharton, Crim. L., sections 250, 251; 2 Wharton, Crim. L., section 2006; *Davis v. Commonwealth,* 30 Pa. 421; *People v. Horr,* 7 Barb. 9, and authorities cited; *State v. Mason,* 13, Ired. L. 341; *People v. Carpenger,* 5 Park. Crim. Rep. 228; *State v. Morrissey,* 22 Iowa, 159; *State v. Potter,* 28 Iowa, 556; *State v. Chicago, B. & P. R. Co.,* 63 Iowa, 509; Code, sections 4296, 4298.

There is nothing in the Code or subsequent legislation limiting or changing the rules of evidence pertaining to the cross-examination of witnesses.

*State v. Red,* 53 Iowa, 70.

A party has no right to cross-examine any witness except as to facts and circumstances connected with the matter stated in his direct examination.

*Cokely v. State,* 4 Iowa, 480; 1 Greenleaf, Ev., sections 445, 449; *Whitsett v. Chicago, R. I. & P. R. Co.,* 67 Iowa, 155.

If the financial condition of the defendant was what the prosecution claims it to have been, then, the deposit in question having been made at about the last hour of the last day on which the bank did business, it could have been collected back in full and was and would be treated under all the circumstances of its acceptance and receipt as a trust fund rather that a deposit received in the ordinary course of the banking business.

*Wasson v. Hawkins,* 59 Fed. Rep. 233; *American Trust & Savings Bank v. Gueder & P. Manufacturing Co.,* 150 Ill. 336.


ON PETITION FOR RE-HEARING.


Having instructed Theodore not to receive the deposit there could be no receipt of it that would render the defendant criminally liable unless he were personally present at the time of such receipt and consented thereto.

*Reynolds v. Keokuk,* 72 Iowa, 373.

Where a fraud is of such a character as to involve a crime, the ratification of the act from which it springs is opposed to public policy and cannot be permitted. When the indorsement of a note is forged, such indorsement cannot be ratified by the person whose name is forged, as the act is criminal and against public policy.

1 Am. & Eng. Enc. Law, p. 430; *Shisler v. Vandike,* 92 Pa. 447 (37 Am. Rep. 702); *McHugh v. Schuylkill,* 67

Pa. 391 (5 Am. Rep. 445); *Workman v. Wright*, 33 Ohio
St. 405 (31 Am. Rep. 546).

*Milton Remley*, attorney general, and *Jesse A. Miller* for appellee.

The indictment is sufficient if the act complained
of is stated with such a degree of certainty, in ordinary and concise language, and in such a manner, as to
enable a person of common understanding to know
what is intended to be charged.

*State v. Golden*, 49 Iowa, 48; *State v. Semotan*, 85
Iowa, 57; *State v. Emmons*, 72 Iowa, 265.

The fact that the defendant endeavored to establish by his evidence in chief was that the deposit of C.
H. Mohling was received without his knowledge and
against his will, and that he never accepted the deposit
and never consented to its acceptance. Anything
which would tend to contradict this evidence could
properly be elicited upon cross-examination.

*Bothwell v. Farwell*, 74 Iowa, 324; *State v. Porter*,
34 Iowa, 131; *Player v. Burlington, C. R. & N. R. Co.*, 62
Iowa, 723; *Glenn v. Gleason*, 61 Iowa, 28.

Where the principal upon a full knowledge of all
the circumstances of the case, deliberately ratifies the
acts, doings, or omissions of his agent, he will be
bound thereby, as fully, to all intents and purposes, as
if he had originally given him direct authority in the
premises, to the extent which such acts, doings, or
omissions reach.

Story, Agency, section 239; *Eadie v. Ashbaugh*, 44
Iowa, 519; *Fintel v. Cook*, 88 Wis. 485; *Crowe v. Capwell*, 47 Iowa, 426; *Farrar v. Peterson*, 52 Iowa, 420;
Sackett, Instructions to Juries (2d Ed.), pp. 63, 64; *Pike
v. Douglass*, 28 Ark. 59; *Meyer v. Morgan*, 51 Miss. 21,
(24 Am. Rep. 617); *Hawkins v. Lange*, 22 Minn. 557;
*Breed v. First National Bank*, 4 Colo. 481; *United States*

*Rolling Stock Co. v. Atlantic & G. W. R. Co.,* 34 Ohio
St. 450 (32 Am. Rep. 380); *Waterson v. Rogers,* 21 Kan.
529; *Heyn v. O'Hagen,* 60 Mich. 150; *Detroit v. Jackson,*
1 Dougl. (Mich.) 106; *Hall v. Chicago, M. & St. P. R.
Co.,* 48 Wis. 317; *Stewart v. Mather,* 32 Wis. 344; *Drake-
ley v. Gregg,* 75 U. S. 8 Wall. 242 (19 L. Ed. 409).

The ratification of an act by the principal has the
same effect as previous authority to do the act, and
relates back to the time the act was done.

*Berryhill v. Jones,* 35 Iowa, 335; *Herriott v. Kersey,*
69 Iowa, 111; *State v. Shaw,* 28 Iowa, 67.


ON PETITION FOR RE-HEARING.


Where a name is forged it may be ratified, and if
ratified it is binding.

*Greenfield Bank v. Crafts,* 4 Allen, 447; *Wellington
v. Jackson,* 121 Mass. 157; *Cravens v. Gillilan,* 63 Mo.
28; *Crout v. DeWolf,* 1 R. I. 393; *Casco Bank v. Keene,*
53 Me. 103; *Forsyth v. Day,* 46 Me. 177; *Livings v.
Wiler,* 32 Ill. 387; *Hefner v. Vandolah,* 62 Ill. 483 (14
Am. Rep. 106); *Union Bank v. Middlebrook,* 33 Conn.
95; *Howard v. Duncan,* 3 Lans. 174; *Commercial Bank
v. Warren,* 15 N. Y. 577; *Weed v. Carpenter,* 4 Wend.
219; *Fitzpatrick v. Caperton Cove School Tract Commis-
sioners,* 7 Humph. 224 (46 Am. Dec. 76); *M'Kenzie
v. British Linen Co.,* L. R. 6 App. Cas. 82.


KINNE, J.—I.   The indictment charges the defend-
ant with the crime of fraudulent banking, committed
as follows: "The said Henry Eifert, on the fifteenth day
of August, in the year of our Lord one thousand eight
hundred and ninety-three, in the county aforesaid
being then and there engaged in the banking and deposit
business, under the name and style of Bank of Tripoli,
and then and there being insolvent, and well knowing
himself to be insolvent, did knowingly accept and

receive from C. H. Mohling a deposit in his banking and deposit business, the sum of one hundred dollars, consisting of gold and silver money, national bank bills, United States treasury notes and currency, and other notes, bills, and drafts circulating as money and currency, the particular description being to the grand jury unknown, to the amount and of the value of one hundred dollars, contrary to the form of the statute in such cases made and provided." The sufficiency of this indictment was questioned by a demurrer, which was overruled, and an exception taken.

It is urged that it is defective, in that it does not state whom the money alleged to have been deposited belonged to, or who was the owner of it, or entitled to its possession; that it fails to aver who, if any one, was defrauded. Section 1 of the act against fraudulent banking prohibits any bank, banking-house, or party engaged in banking or deposit business from accepting or receiving on deposit any money when such banking house or deposit office, firm, or party is insolvent. Acts Eighteenth General Assembly, chapter 153, section 1. Section 2 is as follows: "If any such bank, banking house, exchange broker, or deposit office, firm, company, corporation, or party, shall receive or accept on deposit any such deposits as aforesaid, when insolvent, any officer, director, cashier, manager, member, party, or managing party thereof, knowing of such insolvency, who shall knowingly receive or accept, be accessory to, or permit or connive at the receiving or accepting on deposit therein, or thereby, any such deposits as aforesaid, shall be guilty of a felony, and upon conviction, shall be punished by imprisonment in the state prison for a term not to exceed ten years, or by imprisonment in the county jail not to exceed one year or both fine and imprisonment, the fine not to exceed ten thousand dollars." Acts Eighteenth

General Assembly, chapter 153, section 2. In support
of the contention that the indictment is defective
because it fails to state the name of the injured party,
counsel rely upon cases decided by this court wherein
it was held that the indictment, in certain cases, must
set out the name of the person injured, or attempted
to be injured. We do not think it is necessary to dis-
cuss these cases. Let it be conceded that the indict-
ment in this case must show who the injured party is,
and we think it must be held to conform to the
law in that respect. It occurs to us that one
reading this indictment would at once under-
stand that the charge was that the money belonged
to the person making the deposit; that he was the
owner. If the act complained of is stated with such
a degree of certainty, in ordinary and concise language,
and in such a manner; as to enable a person of com-
mon understanding to know what is intended to be
charged, it is sufficient. Code, section 4305. Can
there be any doubt that such a person, on reading this
indictment, would understand that it charged that
the defendant, knowing that he was insolvent, did
knowingly receive a deposit of money from Mohling,
and that it was his money which was thus deposited?
We think not. Now, one may own money, and may
send it by some one to be deposited in a bank, but we
should not speak of the mere carrier of the money as
a depositor, but the one for whom it was in fact taken
to the bank would be the depositor. The owners of
money deposited in a bank are the depositors of that
bank; that is, they are the people who made the
deposits. We think that, read in the light of the
requirements of our statute, the indictment, to the
common understanding, as fairly charges that Mohl-
ing was the injured party as if it had in express terms
stated that he owned the money which he deposited.

II.   It is stenuously urged that the court erred in permitting certain questions to be asked the defendant on cross-examination.  It appeared from the direct examination that the defendant undertook to state his connection, or rather want of connection, with the making of the alleged deposit.  He testified that he left town that morning early, and went to Waverly; that, prior to going, he had a conversation with his son about receiving deposits on that day; that he told him he was going to Waverly to look the ground over; and that, if things did not look favorable, he would send the son a telephone message, through a party who was with him, not to receive any more deposits, and to stop doing business; that he sent the message to his son to stop doing business, and not to receive any more deposits.  On cross-examination, over the defendant's objection, he was required to testify when he returned from Waverly to Tripoli, and how long he remained in Tripoli, and as to whether he found any deposits had been made after 2 o'clock that day.  The law, undoubtedly, is that the cross-examination must be confined to the matters about which the direct testimony is given.  It is contended that on cross-examination the state was limited to what the defendant did at Waverly.  We do not think so.  The defendant was put upon the stand to show that Mohling's deposit was received without his knowledge and against his instructions; and to show such facts, he testified as we have stated.  The defendant having undertaken to explain his connection, or want of connection, with this deposit, and to show that it was received without his knowledge and against his will, any line of cross-examination which tended to contradict his testimony in chief, or which more fully disclosed his connection with this deposit, was proper.  There was no error in

the rulings in this respect. Even if the cross-examination was improper, the defendant waived any error connected therewith, because, in the further progress of the trial, he testified to the same facts without objection. *State v. Wickliff*, 95 Iowa, 386 (64 N. W. Rep. 283); *Strong v. Railway Co.*, 94 Iowa, 380 (62 N. W. Rep. 802); *Bailey v. Bailey*, 94 Iowa, 598 (63 N. W. Rep. 341).

III. The eighth paragraph of the court's charge reads: "In determining whether the defendant received or accepted the alleged deposit of C. H. Mohling, you are instructed that it is not necessary that the evidence should show, or that you should find, that the defendant in person received such deposit, nor that he was personally present when it was received from said Mohling, if received at all; it is enough if it was received by the cashier or agent of defendant under his authority. But you are further instructed that even though the defendant instructed Theodore Eifert to close the bank, and refuse to receive or accept further deposits, and that, after such instructions to so refuse deposits, the said Theodore Eifert did accept and receive from said Mohling the deposit in question, if so you find from the evidence, still, if the defendant, with knowledge thereof, accepted and retained as a deposit the amount so received from said Mohling by said Theodore Eifert, and placed among and treated it as a part of the funds or assets of the bank, having full knowledge from what source and under what circumstances and by whom it was received, he will be deemed to have knowingly accepted such sum as a deposit. If, however, such deposit was so received without his authority, and was not accepted by him, if at all, with full knowledge of the manner and circumstances of its being deposited, if at all, then he will not be deemed to have knowingly received or accepted such deposit."

Exception is taken to so much of this instruction as relates to the action of the defendant in knowingly accepting and retaining the deposit, after full knowledge from whom and under what circumstances it had been made. The argument of defendant is that when the deposit was received and accepted by defendant's son, and entered upon the books of the bank and upon the depositor's book, the whole transaction was concluded. Now, the facts appear to be that the son had for a long time been in the bank, assisting his father; that the father was in the city of Waverly when the son, who had charge of the bank, received this deposit; that it was received on the afternoon of August 15, 1893, and several hours after the son had received a telephone message from his father to close the bank and to take no more deposits; that the father returned to Tripoli the same evening, and then learned that this deposit had been received, contrary to his orders; that said money was put into the assets of the bank; and that defendant never paid or tendered it back to Mohling. Now, when did defendant "knowingly accept and receive" this money as charged in the indictment? We think he must be said to have done so when he returned home, and first knew of the fact of its receipt If he had given no directions to stop business and refuse further deposits, then it might be said that he should be concluded by the transaction when the money was in fact received by his son, who had authority to act for him. But, having expressly directed the son to cease business and refuse deposits, he had no reason to suspect or believe that his orders would not be obeyed. It cannot therefore be said that he knowingly received and accepted the deposit when it was handed to his son, and by him accepted, without the father's knowledge, and against his express directions. When, however, he arrived home that

evening, he became acquainted with all the facts; he then knew that this deposit had been accepted by the son after he had directed him to take no more deposits; he knew who made the deposit; he knew he was then insolvent, and that he had been before the son had received the deposit; and, knowing all the facts, he did not repudiate the transaction, but retained and accepted the money, at the same time knowing that his bank would never open again. It seems to us that when defendant, after full knowledge of all the facts, on the evening after his return, failed to repudiate the act of his son, and took no steps looking to a return of the deposit to Mohling, he then knowingly received and accepted the deposit. It must be borne in mind that this is not a civil action for damages for the recovery of the money deposited. It may be that in such a case recovery could be had of the defendant, notwithstanding the deposit was received by his agent contrary to his directions. But the gist of the offense charged in the prosecution is in knowingly receiving and accepting a deposit, knowing that he was then insolvent. Surely one whose agent, without his knowledge or authority, and in disobedience of his express instructions, receives and accepts for his principal money as a deposit, will not by such act be rendered liable criminally for knowingly receiving and accepting the money, but it cannot be doubted that, after coming into possession of all of the facts, the principal may so ratify the act theretofore done as to make it binding upon himself, and the basis of a criminal liability. If the defendant had, on being acquainted with what had been done, promptly disavowed the act of his son, and returned the deposit to Mohling, he would not have been guilty, as it could not then have been said that he had knowingly received and accepted the deposit. It seems to us the

instruction is correct, and quite as favorable to the defendant as he had a right to expect.

IV.    Finally, it is said that the verdict is contrary to the evidence.   This conclusion is reached by counsel on the theory that the acts considered in the third division of this opinion, and held by us to justify the instruction complained of, do not, if established, show a violation of the statute.   We think the evidence fully sustains the verdict.   Indeed, it is difficult to understand, under our view of the law, how the jury could have reached a different conclusion.

Discovering no error in the entire record, the judgment below is AFFIRMED.

### SUPPLEMENTAL OPINION ON RE-HEARING.

### SATURDAY, MAY 15, 1897.

FORMER decision *affirmed.*

GIVEN, J.—A re-hearing was granted in this case that we might, with the aid of further arguments, reconsider the objections urged by appellant to the eighth paragraph of the charge to the jury, or in other words, that we might review the conclusion announced in the third paragraph of the opinion.   We have not at any time doubted the correctness of the opinion in other respects, and therefore limit our present inquiry to this one subject.   In said instruction the jury was told, in effect, that it was not necessary that they find that the defendant had in person received the deposit, nor that he was personally present when it was received; that it was enough if it was received by the cashier or agent of the defendant under his authority; that though the defendant instructed his cashier to close the bank, and refused to receive further deposits; and that thereafter the cashier did

accept and receive this deposit. "Still, if the defendant, with knowledge thereof, accepted and retained as a deposit the amount so received from said Mohling, by said Theodore Eifert, and placed among and treated it as a part of the funds or assets of the bank, having full knowledge from what source and under what circumstances and by whom it was received, he will be deemed to have knowingly accepted such sum as a deposit."

Appellant's first complaint in his argument on re-hearing is that there is no evidence to warrant that part of the instruction to the effect that it was not necessary that the defendant should have received the deposit in person, or have been personally present, nor that it was enough if it was received under his authority. It is true there was no evidence to which this part of the instruction, taken alone, could apply; but it was a correct statement of the law, and aided to make plain that which followed in the instruction. Appellant insists that in what follows in said instruction the court attempts to apply to this criminal charge the principle of ratification. He contends that a criminal act cannot be ratified, and cites in support 1 Am. & Eng. Enc. Law, 430, and the cases therein referred to. The instruction does not submit the question of defendant's accepting and receiving the deposit by a ratification of what the cashier had done. It rests the question of accepting and receiving upon whether the defendant retained the deposit, and placed and treated it as part of the assets of the bank, with full knowledge of the circumstances under which it had been received by the cashier. The doctrine of ratification is not invoked to charge the defendant with having accepted and received the deposit as of the time it came into the hands of the cashier. The case was submitted upon the inquiry as

to whether the defendant accepted and received the deposit after being informed of the circumstances under which it had come into the hands of the cashier. In the instruction under consideration, the jury was told that if the defendant, with knowledge of the circumstances under which the deposit was received, accepted and retained it as a deposit, and placed it among and treated it as a part of the assets of the bank, "he will be deemed to have knowingly accepted such sum as a deposit." In the former opinion we said: "It seems to us that when defendant, after full knowledge of all the facts, on the evening after his return, failed to repudiate the act of his son, and took no steps looking to the return of the deposit to Mr. Mohling, he then knowingly received and accepted the deposit."

Appellant contends that, if the defendant and his bank were insolvent at the time the money was received, Mr. Mohling could pursue it as a trust fund in the hands of either the defendant or his assignee, and recover it in kind, or its equivalent, if it had been so mixed with other money as to destroy its identity. He cites *Wasson v. Hawkins,* 59 Fed. Rep. 233, and *American Trust & Savings Bank v. Gueder & Paesehke Manufacturing Co.* (Ind. Sup.) 37 N. E. Rep. 227. Whether such is the law we need not determine, for, if it be, it would apply with equal force if the deposit had been received by the defendant in person, or by his authority. If it be conceded that Mr. Mohling had the right to pursue that deposit as a trust fund, it does not follow that defendant did not knowingly receive and accept it. He not only failed to repudiate the act of his son in receiving the deposit, and failed to return it, but, within four days after its receipt, included that money in a general assignment made by him for the benefit of his creditors. We have

re-examined the case with care, and reach the conclusion that the former opinion is correct, and it is therefore adhered to.—AFFIRMED.

ROBINSON, J. (dissenting).—The defendant was accused and convicted of the crime of fraudulent banking, in that, when insolvent and knowing that fact, he "did knowingly accept and receive from C. H. Mohling a deposit in his banking and deposit business, the sum of one hundred dollars." The court properly charged the jury that it was not necessary to constitute the offense charged that the deposit should have been received by the defendant in person, but that it was sufficient if the deposit was received under his authority by his cashier or agent. *State v. Cadwell,* 79 Iowa, 435 (44 N. W. Rep. 700). But the court also charged the jury that, if the deposit was received by his agent in violation of his authority, "still if the defendant, with knowledge thereof, accepted and retained as a deposit the amount so received, * * * and placed among and treated it as a part of the funds or assets of the bank, * * * he will be deemed to have knowingly accepted such sum as a deposit." It seems to me that this portion of the charge, as applied to undisputed facts in the case, was erroneous, and that the evidence is not sufficient to sustain the verdict. The law does not forbid an insolvent banker to retain a deposit properly received, but to accept or receive it; and whether the defendant is guilty does not depend merely upon his having retained the deposit in question, but whether, by his acts, he accepted or received it, within the meaning of chapter 153 of the Acts of the Eighteenth General Assembly, after he knew that it had been received by his agent in violation of his instructions. It is the general rule that, to constitute a crime, there must be a wrongful act, done with a criminal intent, or the

intentional doing of an act from which a criminal intent is conclusively presumed. 1 McClain, Cr. Law, sections 112, 128; 1 Bishop, Cr. Law, section 364, *et seq.* Wrongful acts, which create a civil liability, may fall short of crime, and the inquiry in this case is not whether the facts show that the defendant is civilly liable for the deposit in question, but whether his acts amounted to the accepting or receiving of the deposit, within the meaning of the statute. He is not charged with having permitted or connived at the accepting or receiving of the money.

The evidence shows, without conflict, the following facts: The defendant went from Tripoli to Waverly, in the morning of August 15, 1893. Before going, he talked with his son Theodore, who was left in charge of the bank, and stated that he was going to Waverly, "to look the ground over," and that, if things did not look very favorable, he would send a telephone message to the son to stop business, and not receive any more deposits. The defendant sent a message to that effect before 2 o'clock of that day. It was received by the son, but he did not obey it, because he thought his father took too gloomy a view of the situation, and received several deposits, including the one in question, after he received the message, and before 4 o'clock, when he closed the bank. The defendant returned at night, and was informed by his son that he had closed the bank, but that he had kept it open until 4 o'clock, and had received deposits, including the one made by Mohling. The defendant was dissatisfied that his order had not been obeyed, but did nothing with the money received. There is no evidence whatever, that he placed it among the assets of the bank. It had been received and placed with the funds of the bank by his son. There is no pretense that it had been kept apart from the money previously in the bank, nor that it could have been

identified and treated as a special deposit. It is not
shown that the defendant took actual possession of it,
but it seems to have remained where the son placed
it until the assignment for the benefit of creditors
was made. The bank was never opened after it was
closed by the son, as stated. When he received the
deposit of Mohling, the amount was entered in the
pass book of the latter, and it is not shown that any
other entry was made in any book until after the
assignee had taken possession of the bank. The son
then asked of the assignee the privilege of posting in
the books the work done on the fifteenth of August.
Mohling never made any demand for the return of the
money he had deposited, and it does not appear that
it was ever suggested to the defendant by any one
that the deposit should be refunded before he made
the assignment for the benefit of creditors. The entire
amount due Mohling, including the deposit in question,
was five hundred and forty-eight dollars and forty-four
cents; and it is shown that, before the assignment
was completed, the defendant endeavored to have
Mohling commence suit, aided by attachment, to
recover the amount due him, and represented that, if
he would do so, he would obtain all of it. The total
amount due Mohling, including the deposit in ques-
tion, was set out in the schedule of claims attached to
the assignment, but the defendant did not prepare the
schedule. That was done by his attorney and his son,
and he does not appear to have given the fact that the
Mohling claim included the deposit in question any
thought, but, if he had purposely included it, that fact
would not have shown that he had accepted or received
the money. That had been done, in violation of his
instructions, by his son, and the money so mingled
with the funds of the bank that it could not be identi-
fied. The unauthorized act of the son was effectual
to create between the defendant and Mohling the

relation of debtor and creditor, *Independent District of Boyer v. King*, 80 Iowa, 500 (45 N. W. Rep. 908), because it was the right of Mohling, in the absence of actual knowledge of the limitation upon the power of the son, to rely upon the apparent authority with which the defendant had clothed him to receive the deposit. The relation stated having been·established, it could not have been changed, and the money given the character of a special deposit, without the consent of Mohling. It is not shown that the defendant attached to his assignment an inventory of his assets, and the record is entirely barren of evidence to show that he had any intent in making the assignment to appropriate to his own use any money or other property which belonged to Mohling, or to alter their relation in any manner. The assignee acquired only the right of the defendant in the property assigned. *Meyer v. Evans*, 66 Iowa, 183 (23 N. W. Rep. 386); *Independent District of Boyer v. King*, 80 Iowa, 501 (45 N. W. Rep. 908). If Mohling had any special interest in or lien upon the property assigned while it was in the hands of the defendant, that interest or lien could have been enforced against the assignee. See *Bruner v. Bank* (Tenn. Sup.) 34 L. R. A. 532, and notes; s. c. 37 S. W. Rep. 286. It is my opinion that the evidence is sufficient to show a civil liability only; that it wholly fails to show that the defendant accepted or received the deposit in question within the meaning of the statute; and that it does not show any act on his part done with a wrongful intent, or from which a wrongful intent should be presumed. Therefore, I think the judgment of the district court should be reversed, and that the defendant should be awarded a new trial.