THE STATE OF KANSAS v. ALEXANDER WARNER.

No. 11159.

1. BANKS AND BANKING—*Case Followed.* The case of *In re Taylor*, ante, p. 87, followed.

2. ——— *"Drafts"* and *"Checks."* The word "draft," as used in section 16, chapter 43, Laws of 1891, is a general term, and includes checks as well as other orders drawn for the payment of money.

3. ——— *Criminal Procedure—Joinder of Offenses.* In a prosecution against an officer of a bank for knowingly accepting and receiving deposits when the bank is insolvent, the receipt of separate deposits from different depositors may be charged in separate counts in one information, and a trial and conviction may be had and sentences imposed on such counts as the proof warrants, although each of the counts charges a separate and distinct felony. (*The State v. Hodges*, 45 Kan. 389, 26 Pac. 626.)

4. ——— *Actual Knowledge of Insolvency Necessary.* Where the defendant is charged with having been the president of an incorporated bank which was insolvent, and having knowingly accepted and received deposits knowing the bank to be insolvent, in order to sustain a conviction the proof must show that the defendant had some direct personal connection with the receipt or acceptance of the deposit. The facts that he was president of the bank and in a back room at the time the deposit was received, and that he knew the bank was open for business, are insufficient to sustain a conviction under such charge.

Appeal from Cherokee district court; A. H. SKID-
MORE, judge. Opinion filed December 10, 1898. Re-
versed.

*Charles Stevens,* county attorney, and *Charles W.
Smith,* for The State.

*W. B. Glasse,* and *C. W. Trickett,* for appellant.

The opinion of the court was delivered by

ALLEN, J. : The appellant, Alexander Warner, was
charged by the county attorney of Cherokee county
with having accepted and received on deposit in the
Baxter Bank money, and drafts circulating as money,
when the bank was insolvent. It is alleged in the in-
formation that the Baxter Bank was a corporation
and that Alexander Warner was its president, Ben. S.
Warner vice-president, A. A. Warner cashier, and
Russell E. Davis clerk and bookkeeper. All of these
persons were jointly charged with receiving deposits
knowing the bank to be insolvent. The appellant, on
a separate trial, was convicted and sentenced on the
first, fifth, seventh and tenth counts of the informa-
tion, which contained eleven counts. The second,
fourth, sixth, eighth and eleventh counts charged the
appellant with being accessory to the receipt of de-
posits, and the ninth charged him with having per-
mitted and connived at the receipt of the same deposit
which the seventh count charged him with hav-
ing accepted and received. The jury found the
defendant guilty on the third count, but as to this the
court granted a new trial. The sentence was to con-
finement in the penitentiary for the term of one year
on each of the counts on which he was convicted.

It is first contended that the banking act of 1891,

under which the prosecution was instituted, was re-pealed by the new enactment of 1897, and that the saving clause is insufficient to authorize the commencement of a prosecution under the law of 1891. We have reached a conclusion adverse to this contention in the case of *In re Taylor*, ante, p. 87. It is unnecessary to restate in this case the reasons for that conclusion.

The next contention is that in certain counts of the information the defendant was charged with having received checks. It is said that section 16, chapter 43, Laws of 1891, under which the information was drawn, does not use the word "checks"; that there is a clear distinction in the law between a check and a draft; that the proof was of deposits of checks properly so denominated, and that the motion to quash the information as to these counts, because it did not state facts sufficient to constitute a public offense, should have been sustained. The distinction pointed out by counsel is between bills of exchange, properly so termed, and private checks. In Bouvier's Law Dictionary, Rawle's Revision, draft is thus defined : "An order for the payment of money drawn by one person on another. (1 Story, 30.) It is said to be a *nomen generalissimum*, and to include all such orders. ( Id., per Story, J.)" Worcester defines it : "An order by which one person draws on another for a certain sum of money, a check, a bill of exchange." In 5 American and English Encyclopedia of Law (2d ed.), 1029, it is said : "A check is a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds, for the payment at all events of a certain sum of money to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand."

That the deposit of a check falls as clearly within the reason of the statute as deposits of other commercial paper circulating as money is too clear for argument. The legislature, having used a general term which includes within its ordinarily accepted meaning checks as well as other orders for the unconditional payment of money, must be held to have intended to make the receipt on deposit of checks circulating as money by the officers of insolvent banks equally criminal with the receipt of other currency. The word "check" is not used in section 16, chapter 43, Laws of 1891. It is used, however, in section 15, chapter 47, Laws of 1897, which covers the same subject-matter. It is contended that the new act shows a legislative construction of the old, and indicates that the legislature of 1897 regarded the prior act as defective in this particular. While this suggestion has some force, the real question is, What did the legislature of 1891 intend, and what does the language used include? It may be that in a prosecution under the last enactment, where notes, bills, checks and drafts are all named, the instrument received should be properly designated in the information, and that the charge must be proved as alleged; but where the word "check" is not found in the law, but the general term "drafts" is used, it must be held that averment and proof of the receipt of a check is sufficient.

The defendant moved the court to require the state to elect on which count it would rely for conviction. This motion was overruled, and it is strenuously insisted that this was error. The information charged five separate and distinct transactions with different persons, and the defendant has been sentenced to punishment on each of four different counts. It is

7—60 KAN.

insisted that the joinder of charges of distinct felonies in one information and forcing the defendant to trial on all of them is contrary to well-established principles of law. Counsel for appellant concede that the case of *The State v. Hodges*, 45 Kan. 389, 26 Pac. 676, is clearly opposed to their contention. It was there held :

"Several separate and distinct felonies may be charged in separate counts of one and the same information, where all the offenses charged are of the same general character, requiring the same mode of trial and the same kind of evidence, and the same kind of punishment, and the defendant may be tried upon all the several counts at one and the same time, all resting in the sound judicial discretion of the trial court."

It is said by counsel that the authorities cited in the opinion in that case do not uphold the conclusion reached by the court. It does appear that the prior decisions of this court cited in the opinion were in prosecutions for misdemeanors, and it has long been the settled law that such joinder is proper in prosecutions for misdemeanors. It is said that these decisions have no bearing and give no support to the proposition that a defendant may be convicted and punished for several distinct felonies on one trial. While this is true as to the Kansas cases cited, the other citations (Whart. Cr. Pl. & Pr., § 285, *et seq.*, 1 Bish. Cr. Proc. (3d ed.), §§ 424, 450, 451, and 4 A. & E. Encycl. of L. (1st ed.) 754, 756) do give support to the conclusion reached by the court. The reasons for the distinction which formerly prevailed in England between prosecutions for felonies and for misdemeanors no longer exist. Where the usual punishment for the commission of a felony was death, great strictness in charging the offense, as well as in the mode of trial,

was and ought to have been maintained; but in this state, and in this country generally, there is no broad distinction between the character of the punishment inflicted for misdemeanors and for felonies other than murder. Fines and imprisonment, with or without hard labor, are the penalties usually imposed for both felonies and misdemeanors. The distinction between the two classes of crimes drawn by our statute rests on the character of the punishment, offenses punishable by death or confinement in the penitentiary being denominated felonies, and all others misdemeanors. The mode of trial in all cases is substantially the same, and in cases like the one under consideration, where the proof must necessarily be in part the same on all of the charges, it seems entirely proper to join charges of separate transactions of similar character. The tendency of the courts in most of the states seems to be to uphold the practice and follow the rule adopted in the case of *The State v. Hodges*, supra. (10 Encycl. Pl. & Pr. 547, *et seq.*)

The last and most serious question is as to the sufficiency of the proof. It is claimed on behalf of the appellant that there is a total want of proof to sustain the charge that he received or accepted any one of the deposits mentioned in the counts under which the conviction was had. Counsel for the state have failed to call our attention to any testimony in the record showing that Alexander Warner personally took either of the deposits, or even had any knowledge that any one of them was in fact made. We have examined the testimony with some care, and fail to find any statement in the record showing that the appellant had any direct connection with the receiving of any of these deposits, or that he did anything as a distinct acceptance of any of them. The only

manner in which he is connected with either transaction is by his official relation to the bank as its president and proof that he was sometimes seen in the bank. One depositor stated that he thought the appellant was in the back room of the bank at the time the deposit was made. There is no testimony showing that he gave special directions to any one to receive either deposit, or that he knew the amount or character of any of them. The language of the statute is :

"No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills or drafts circulating as money or currency, when such bank is insolvent ; and any officer, director, cashier, manager, member, party, or managing party of any bank, who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting on deposit of any such deposit, shall be guilty of a felony. . . ."

The charges contained in the counts of the information under which the conviction was had were all that the defendant accepted and received on deposit the several items described. It must be borne in mind that the Baxter Bank was a corporation. The connection of the appellant with it was that of an officer. He is not charged with being the owner. The other persons connected with the bank were its officers and employees. Possibly a private banker who employed clerks and servants to receive deposits might be bound even in a criminal case by their acts where their possession immediately became his, but the statute as framed seems to denounce its penalties against the individual who shall take deposits into the bank when he knows it to be insolvent, and also against all others

who knowingly permit or connive at their reception. In the case of *The State v. Wells*, 134 Mo. 238, 35 S. W. 615, construing a Missouri statute making it larceny for an officer of a banking institution to receive or assent to the reception of a deposit, it was held by the supreme court of that state that a charge that the defendant received a deposit knowing the bank to be insolvent was not sustained by proof of his assenting only, and that, as the evidence did not tend to prove the reception of the deposit, there was a total failure of proof.

Whether the evidence given at the trial in this case was sufficient to uphold a charge against the defendant of having permitted or connived at the receipt of the deposits, we need not decide. The charge is that he accepted and received. The word "accepted" implies that the bank received and that he agreed and assented to the reception. He could not accept without at least knowing what was received. The proof being insufficient to sustain the conviction under these counts of the information, the motion for a new trial should have been sustained. The judgment is reversed.