J. ALAN APPELGET et al. v. STATE.

No. A-4693.   Opinion Filed Jan. 23, 1926.
(243 Pac. 251.)

126

A. L. Squire and Titus & Talbot, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J. For convenience and brevity, the plaintiffs in error will be referred to as defendants. They were prosecuted in the district court of Alfalfa county under an indictment for receiving a deposit in an insolvent bank. The defendants J. Allen Appelget, G. L. Berry, and Harry E. Appelget were respectively president, vice president, and cashier of the Bank of Goltry, and were directors in said bank. On the 16th day of November, 1921, the bank, through one Reuben Sparks, its receiving teller, received a deposit from C. C. Clark of four checks aggregating $129.78. On the following day the bank closed. The case went to trial on November 16, 1922. The assignments of error presented may be summarized as follows: Error of the court in admitting incompetent, irrelevant and immaterial evidence on the part of the state; error of the court in excluding competent and material evidence offered by the defendants; error of the court in his instructions to the jury.

The statute under which the prosecution was had is section 4128, Comp. St. 1921, the pertinent part of which is as follows:

"* * * No bank shall accept or receive on deposit * * * any money * * * checks or drafts, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be punished," etc.

Section 4135, Comp. St. 1921, defines "insolvent" as follows:

"A bank shall be deemed to be insolvent, first, when the actual cash market value of its assets is insufficient to

pay its liabilities; second, when it is unable to meet the demands of its creditors in the usual and customary manner; third, when it shall fail to make good its reserve as required by law."

And section 4124, Comp. St. 1921, defines the reserve required by banks to be kept, and provides that any bank which shall fail for a period of 30 days after notice from the bank commissioner to restore its lawful reserve may be deemed insolvent, and possession of it may be taken by the bank commissioner.

In order to find the defendants guilty in this case, it was necessary that the state prove by competent evidence that at the time the deposit was received the bank was insolvent, and that defendants had knowledge. This could be established only by an examination into the affairs of the bank generally and the method and manner of the conduct of the bank by defendants as going to their knowledge of its condition, since knowledge must be proven by the surrounding facts and circumstances.

Under the first assignment, it is contended by the defendants that section 4135, supra, defines "insolvent" for civil purposes only; that the test of solvency under the criminal law is to be determined by ascertaining if the value of the assets of a bank when handled by the rightful owners in the usual course of business is equal to the liabilities of the bank. If they are, the bank is solvent in so far as fixing the acts of its officers as criminal. If they are not, it is insolvent. In other words, that the term "insolvent," as used in section 4128, supra, means insolvent in the broad general sense.

It is necessary that we determine the meaning of the word "insolvent" as used in the criminal statute defining the offense charged. Section 4128. Does it mean insolvent in the broad, general sense as applied to an individual or institution whose entire property and assets, when converted into money without unreasonable haste, is insuffi-

cient to pay liabilities; that is, when the actual cash market value of its assets is insufficient to pay liabilities, and where it is not able in a reasonable time by pledging its assets and credit to obtain means to meet its debts and obligations in the ordinary course of business, or does it mean insolvent as the term is defined by section 4135, above quoted. The word is differently defined by different courts. 32 Corpus Juris, 806, 14 R. C. L. 628 (2). Our statute defining the word "insolvent" is a part of the general banking law in which all the provisions for organizing banks, creating a banking board and the office of bank commissioner, and providing for a state guaranty fund, and for the management and control of banks generally is embodied. The duties of members of the banking board and the banking commissioner are fixed. The power of the bank commissioner to close, take over, and liquidate banks under conditions stated is given. Among these powers it is provided that, when the reserve of any bank shall be below the required amount, the bank commissioner shall notify such bank, and, if the bank shall fail for a period of 30 days after notice to restore its reserve, it may be deemed insolvent, and the bank commissioner may take possession. Section 4124, Comp. St. 1921.

Upon a consideration of the entire statute, we are of the opinion that the word "insolvent," as used in section 4128, wherein it is made a crime to accept or receive deposits by an insolvent bank, is that state of being insolvent which arises when the cash market value of the assets of the bank are insufficient to pay its liabilities; or where the bank is unable to meet its obligations, liabilities, and debts, and to pay its depositors in the ordinary course of business, when given a reasonable time to procure the money for such purpose by pledging its collateral and credit to meet any temporary inability or emergency, and not the state of being insolvent set out in sections 4124 and 4135. It certainly was not the legislative intent to make criminal

the accepting or receiving of deposits in a bank insolvent in that technical sense in which the word is used in section 4124, where a bank may be deemed insolvent when it shall fail for a period of 30 days after notice to restore its reserve. Nor was it the legislative intent to make criminal the act of the officers of a bank to accept or receive deposits, where, by reason of some unexpected demand or the failure to receive expected remittance, the bank had failed to pay some liability in the usual and customary manner, as defined in the second subdivision of section 4135. To conclude otherwise would lead to absurd results. For instance, a bank might have assets worth much more than its liabilities, and yet by inadvertence or negligence have failed to make good its reserve or have failed to procure means to meet some unexpected demand in the usual and customary manner. This view is supported by the case of Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022, where it is held that—

"The term 'unsafe or insolvent' as used in section 4541, St. 1898, does not mean insolvent in the limited sense of inability to pay indebtedness in the ordinary course of business.

"The term mentioned means insolvent in the broad general sense of a deficiency of one's assets in realizable cash available within a reasonable time, treated as an ordinarily prudent person would generally conduct his business under the same or similar circumstances, to pay his liabilities."

The court in that case, however, gives some weight to the fact that the Wisconsin statute used the words "unsafe and insolvent," and said that the word "insolvent" was used as the legal equivalent of "unsafe," and intimated that this use of terms might distinguish it from the word "insolvent" as used in the statute of some of the other states.

The case of Skarda v. State, 118 Ark. 176, 175 S. W.

1190, Ann. Cas. 1916E, 586, was a prosecution under the banking laws of the state of Arkansas for receiving deposits in an insolvent bank under a statute in language very similar to ours. The law there defined a bank as "insolvent" under five different contingencies, and in the instructions of the court the jury were informed the meaning of "insolvent" in a criminal sense as follows:

"Now, upon the question of insolvency, you are instructed that the bank was insolvent in the sense used in the indictment. First, if the bank at the time of the deposit referred to in the indictment by Joe Janet did not have assets sufficient to pay its debts; second, if the bank was financially unable to pay its debts or obligations when they became due. Now, this inability to pay its debts does not mean a temporary inability to pay its debts such as might occur when there is a 'run on the bank' or failure of the officers of the bank to have enough available cash on any particular day to run the bank that day, or because of any other emergency, but it means an inability to meet the bank's obligations or debts and pay depositors in the ordinary course of business when given such a reasonable time to get the money as might be expected or required by a bank in carrying on its banking business. In other words, if the bank, under ordinary and usual circumstances, was unable to get the money by putting up its collateral and credit to pay its debts or depositors as same became due and presented for payment in the ordinary course of its business, it was insolvent in the sense used in the indictment."

The language of this instruction differs widely from the statutory definition of insolvent, but that court holds the instruction was not erroneous.

It is contended that the proof shows that defendants did not personally receive the deposit upon which the charge is predicated, nor does it show that defendants had anything to do with receiving it. Where the statute, as here, prohibits the officer or managers of an insolvent bank from permitting, conniving at, assenting to, or being accessory to, receiving or accepting deposits, they may be convicted

as principals, although they did not manually receive the deposit, or were not present when the deposit is received. 3 R. C. L. 498, § 124; State v. Mitchell, 96 Miss. 259, 51 So. 4, 20 L. R. A. (N. S.) 1072, Ann. Cas. 1912B, 309; State v. Cramer, 20 Idaho, 639, 119 P. 30; State v. Eifert, 102 Iowa, 188, 65 N. W. 309, 71 N. W. 248, 38 L. R. A. 485, 65 Am. St. Rep. 433; State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A. 142, 65 Am. St. Rep. 17.

Various items of evidence were objected to which were admitted by the court and are assigned as error. Special reference will be made to only a few of these items. It is argued that the admission of the criticism made by the bank examiner of the Bank of Goltry on July 13th preceding was incompetent. This contention, we think, is not tenable. By section 4176, Comp. St. 1921, it is made the duty of the examiner to report on the condition of a bank examined, and in Hays v. State, 22 Okla. Cr. 199, 210 P. 729, the reports and records of the state examiner and inspector are held competent as primary evidence. In Mathews v. State, 19 Okla. Cr. 153, 198 P. 113, it is in effect held that such instrument was admissible in evidence under the terms of section 654, Comp. St. 1921, designating what records may be received as primary evidence. See, also, State v. Welty, 65 Wash. 244, 118 P. 10. The books and records of the Goltry Bank, so far as they were pertinent to the charge, were admissible when properly identified as the books of the bank. They are quasi public records required by law to be kept, with severe penalties provided for the making of false entries therein. They are kept under the general supervision of the officers of the bank, and are evidence of the condition of the bank and of the knowledge of the officers of the bank as to its condition. State v. Easton, 113 Iowa, 516, 85 N. W. 795, 86 Am. St. Rep. 389.

The statute referring to books of account as evidence (section 653, Comp. St. 1921) does not apply.

Complaint is made of the admission of the testimony of the witness Wonderlich that certain items sent from the Federal Reserve Bank at Oklahoma City to the Bank of Goltry were not returned in due course, but were delayed for a number of days longer than necessary in the usual and customary manner. Some of this evidence went beyond the scope permissible, as when the witness was permitted to testify to the rules and regulations established by the Federal Reserve Bank for the forwarding of items to other banks, and the fact that his bank had the Bank of Goltry on a three-day schedule.

Complaint is also made of the evidence of the witness King, agent for the state banking department, as to the affairs of the Bank of Goltry, and a statement of liabilities and assets prepared by him, and of his testifying to the statutory requirements for maintaining the bank's legal reserve. Where records are voluminous, and of such a character that the average juror would not be able to analyze them and arrive at what they disclose, a competent witness may properly testify and explain the books and records in question. 2 Ency. Ev. 690 (c). There was no error in admitting the statement of assets and liabilities prepared by the witness King, and, while the cash reserve required is a matter of law, it is not prejudicial that the witness stated the fact for the information of the jury.

It is further complained that the witness Enlow was permitted to testify as to the reputation for solvency on or after January 1, 1922, of different persons who had notes in the bank. This was not erroneous, because the matter of solvency at the time the deposit charged as the basis of the offense was received was material, and it was proper to show the condition of the bank at a subsequent time not too remote. State v. Welty, supra. Insolvency may be proven by general reputation when properly restricted. Ellis v. State, supra; Mathews v. State, supra, and authorities there cited.

Another witness was handed certain papers referred to as cash letters, purporting to have been sent from the Federal Reserve Bank to the Bank of Goltry, and purporting to accompany cash items sent which the witness testified were not handled in the usual and ordinary manner, and not within the limit of time promulgated by the Reserve Bank in dealing with the Bank of Goltry. This tended to prove that the Bank of Goltry at the time was insolvent. These cash letters were not shown to have been a part of the records of the Bank of Goltry. They were not shown to have been made by the witness or that he had any knowledge that they were correct or were in fact sent to the Bank of Goltry. There was sufficient preliminary or foundation evidence on which to predicate their admission. They were improperly admitted.

Other items of evidence are assigned as erroneous, but none of them are of sufficient importance to notice specially. In a case of this kind, where the evidence depends largely upon books, papers, and documents and the value of paper assets, the rules of evidence should be liberally construed so as not to hinder the development of the true state of affairs. We find no substantial error in the admission of the other items of evidence complained of.

Upon the second assignment, that the court erred in excluding evidence offered by the defendants, various rulings are cited, some of which will be noticed. In one instance, on cross-examination, the bank examiner was asked whether in his judgment the Bank of Goltry was insolvent at the time of his last examination in July, 1921. This was excluded. The defendants then made an offer to prove that at the time the bank closed it was in the same condition as it was at the time of the examination in July, 1921. Inasmuch as solvency was to be determined from a general consideration of the value of the bank's assets and its liabilities, it was a matter largely to be proven by opinion, and the evidence excluded was competent. This was further

competent, for the reason that the criticism of the bank commissioner at the time of his examination had been admitted, and it might reasonably be taken by the jury as the opinion of the bank examiner that the bank at the time was in an insolvent condition, and it was, therefore, pertinent to ask on cross-examination if at that time in his opinion it was insolvent. It was further competent as touching the knowledge of the defendant as to the condition of the bank. His opinion of the condition of the bank at the time of the examination would have some probative force that the defendants did not know of the insolvency and might in good faith have believed that it was solvent. This exclusion of evidence was a severe restriction on the right of cross-examination.

It is also contended the court erred in excluding questions asked the witness Hulsey, who was a customer of the bank. He testified for the state, in substance, that the defendant Berry had talked to him about the condition of the bank, and had told Berry he did not want to check his money out unless something was going to happen or that there was a likelihood of the bank failing; that some time thereafter, and shortly before the bank closed, Berry had said to him: "Well, it is just about to happen." He was asked on cross-examination if in that conversation Berry did not further inform him that the Bank of Goltry had a promise of $15,000 from the Fourth National Bank of Wichita which would put it in good running order, which question was excluded. This was also a too severe restriction on the right to cross-examination, since it might tend to show the belief of the defendant Berry that the bank was solvent.

Other rulings excluding evidence are complained of, but none of them are of sufficient importance to require special notice. The statute defining "solvency" and the statute making the receiving of deposits by the officers of an insolvent bank a felony, are drastic, and a defendant

charged under such statute should be given a liberal right to cross-examine, and to introduce evidence which would tend to disprove insolvency, knowledge, or bad faith.

The instructions complained of define insolvent in the language of section 4135, supra. Since this section does not define the word "insolvent" as used in the statute making it a felony to receive deposits by an insolvent bank as charged in the information in this case, it follows that they are erroneous.

For the reasons assigned, the case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.