## WADDIE HUDSON v. STATE.

No. A-5989. Opinion Filed July 16, 1927.
(258 Pac. 352.)

W. J. Crump and Gus Seawel, for plaintiff in error.

M. B. Cope and J. T. McIntosh, for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, in the district court of Cherokee county was convicted of receiving deposits in an insolvent bank, and was sentenced to serve a term of five years in the state penitentiary, and to pay a fine of $5,000.

Several assignments of error are argued in the brief, which will be considered in the order presented.

The prosecution is based on section 15, chap. 6, p. 132, Session Laws 1907-08, being section 4128, Comp. St. 1921. The first contention is that this section was repealed by implication by chapter 22, Session Laws 1913. It is argued that the 1913 act is a revising act, intended as a substitute

for all former acts and covering fully the subject of banking.

The title to the latter act is as follows:

"An act amending sections 1, 2, and 3 of chapter 31 of the Session Laws of Oklahoma, 1911, and section 3 of article 2 of the Session Laws of Oklahoma, 1907-08; providing penalties for the violation of the banking laws of this state, and providing punishment therefor; and declaring an emergency."

It is evident that the purpose of this act, as expressed in the title, is to amend three sections of the act of 1911, and one section of the act of 1907-08, and to provide penalties for violation of the banking laws. An examination of the provisions of the act discloses that it remodels, amends, and clarifies several of the criminal statutes relative to banking, but it does not cover the entire field. The title itself precludes the idea that it covers the entire subject of banking, or is intended to supersede, repeal, or amend any of the provisions of the laws of 1907-08, or the laws of 1911 except as specified or that it intended to provide penalties for the violation of all banking laws of the state. It does not mention the law relative to making a false report to the banking commissioner, nor the crime of larceny by an active managing officer of a bank in borrowing from his bank, nor the crime of receiving deposits in an insolvent bank, the offense here charged, and we think there was no intention to repeal it. Nor does the 1913 act cover the offense charged, and the act of 1907-08 defining the offense of receiving deposits in an insolvent bank is in full force and effect.

Repeals by implication are not favored, and will not be adjudged unless it necessarily follows from the language used. The presumption is against the intention to repeal unless express terms are used. Particularly is this true where the two acts are not irreconcilable or necessarily inconsistent, but both may be made to stand to-

gether. Huston v. Scott, 20 Okla. 142, 94 P. 512, 35 L. R. A. 721; 25 R. C. L. 918, 919, 921; Chew Heong v. U. S., 112 U. S. 536, 5 S. Ct. 255, 28 L. Ed. 770.

From the record it appears that defendant was president, a director, and an active managing officer. He was in the bank both in the forenoon and afternoon of the day the offense is charged, but was not present when the particular deposit was received by the cashier. Counsel earnestly insists that since the statute upon which the prosection was predicated, section 4128, supra, provides that any officer, etc., who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at receiving or accepting, shall be guilty of a felony, that four separate offenses are created. First, accepting or receiving. Second, being accessory to accepting or receiving. Third, permitting an accepting or receiving. Fourth, conniving at an accepting or receiving. That since defendant was charged with accepting and receiving he cannot be convicted where the proof shows, if any offense was committed, it was some other of the enumerated offenses. In support of this contention, defendant cites: State v. Warner, 60 Kan. 94, 55 P. 342; Ex parte Rickey, 31 Nev. 82, 100 P. 134, 135 Am. St. Rep. 651; State v. Wells, 134 Mo. 238, 35 S. W. 615.

These cases support the contention made. The Warner Case is under a statute almost identical with our statute. In this state, however, the distinction between an accessory and a principal has been abolished. Section 1521, Comp. Stat. 1921. Under this provision, one who connives at, aids, assists, abets, or encourages the receiving of a deposit in an insolvent bank, knowing it to be insolvent, is not prosecuted as an accessory but as a principal. So far as we are able to learn at the time those opinions were rendered in the Kansas, Nevada, and Missouri cases cited, the statute abolishing the distinction between principal and accessory was not in force in

those states. These decisions are therefore not applicable. This court, in the case of Appelget v. State, 33 Okla. Cr. 125, 243 P. 251, held:

"Where the managing officers of a bank, with knowledge that it is insolvent, permit the bank to * * * receive deposits by its employees, they are guilty of accepting and receiving deposits within the meaning of the law, although they do not personally receive the deposits."

This holding was reaffirmed in the case of White v. State, 36 Okla. Cr. 57, 252 P. 455, and is supported by numerous authorities. See 3 R. C. L. 497; State v. Mitchell, 96 Miss. 259, 51 So. 4, 26 L. R. A. (N. S.) 1072, Ann. Cas. 1912B, 309; State v. Cramer, 20 Idaho, 639, 119 P. 31; State v. Eifert, 102 Iowa, 188, 65 N. W. 309, 71 N. W. 248, 38 L. R. A. 485, 63 Am. St. Rep. 433; State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A, 142, 65 Am. St. Rep. 17.

Complaint is next made that the court admitted incompetent and immaterial testimony prejudicial to defendant. Under this assignment various items of testimony are challenged as inadmissible. In one instance the witness Patton for the state was asked, concerning $20,000 worth of paper ordered taken out of the bank, whether or not such order was equivalent to an assessment. It is insisted this calls for a conclusion and assumes that such an order was made, and on this subject several other exceptions are presented. The state also after preliminary qualification offered the testimony of several witnesses as to the reputation for solvency of various persons whose notes were in the assets of the bank, and their opinion of the value of such notes. Evidence was also offered as to the amounts realized upon the security of certain notes and various other matters in reference to the value of the bank's assets. The main issues for the determination of the jury were: Was the deposit in question received as alleged? Was the bank insolvent

at the time? Did defendant have knowledge that it was insolvent? The matter of solvency of a bank and the knowledge of its solvency or insolvency can hardly be proven by the hard and fast rules of evidence. As a consequence there has been a softening of the strict application of the rules of evidence where it is sought to prove these and like matters. In such cases matters of opinion, reputation and, in a sense, hearsay, are permitted.

It is a general rule that the value of assets of a failed bank may be testified to by any person showing some knowledge of the financial reputation of the parties liable on such assets or the securities behind them; at or about the time to which the inquiry is directed. 3 R. C. L. 493; State v. Welty, 65 Wash. 244, 118 P. 9; Mathews v. State, 19 Okla. Cr. 153, 198 P. 112; Appelget et al. v. State, 33 Okla. Cr. 125, 243 P. 251; White v. State, 36 Okla. Cr. 57, 252 P. 455; Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093; St. Louis, etc., Ry. Co. v. Weldon et al., 39 Okla. 369, 125 P. 8; Fire Ass'n, etc., v. Farmers' Gin Co., 39 Okla. 162, 134 P. 443.

We have examined the various matters urged under this assignment and under the liberal rule of evidence applicable on questions of this kind, find no substantial error.

Error is further argued that the court excluded competent and relevant testimony offered by defendant. The record in this case is extremely voluminous, consisting of two volumes aggregating 1,500 pages. It is therefore impossible that we should discuss the many objections called to our attention. Several objections of the state to the testimony offered were sustained and are pointed out in the brief. The witness Freer, liquidating agent for the bank, was asked by defendant's counsel on cross-examination concerning a suit on a certain note why he did not have the

defendant and the cashier of the bank as witnesses. The value of this note as an asset of the bank was material. Why these particular witnesses were not used was not material. The maker of the note, however, was on the stand and testified that the note had no value, as did two or three other witnesses testifying to the value of assets. Ballenger, cashier of the bank, was asked on cross-examination if defendant did not make loans at his place of business, away from the bank, giving his personal check to the borrower, instead of having the borrower go to the bank for the money. It had been shown by the state that the proceeds of various loans had gone to the credit of defendant's account. This evidence would have been highly material if the question had been directed to any of these transactions, but it was not so limited. It was not important that the defendant made other valid transactions, and evidence as to them would not be relevant. Various other objections to the introduction of evidence is pointed out. On the whole, however, we think the court was fairly liberal in permitting the introduction of evidence, and that there cannot be said to be the exclusion of any material evidence offered by defendant prejudicial to him.

It is also urged that the evidence does not sustain the verdict; that at the time the bank closed its assets and liabilities were the same, approximately $50,000, as shown by the books of the bank; that the value of the bank's assets was not impeached by witnesses having the required information. This is largely a question of fact under all the evidence, and we find an abundance of evidence to sustain the verdict.

We do not overlook the claim that the instructions are erroneous, but we have examined them fully and find that as a whole they fairly state the law and contain no error that amounts to a substantial prejudice.

The verdict is challenged as vague, indefinite, and uncertain. It is in the following form:

"We, the jury, duly impaneled and sworn in the above-entitled action, do upon our oaths find the defendant guilty of receiving deposits in the Farmers' State Bank of Park Hill while the said bank was insolvent as charged in the information, and fix his punishment at imprisonment in the state penitentiary for a term of five years and a fine of $5,000.00."

Where an information charges a crime which includes other offenses of lesser degrees of the crime charged, the verdict must be sufficiently definite that the court may ascertain the particular offense or included offense for which a defendant is convicted and pronounce the proper sentence. Clemons v. State, 8 Okla. Cr. 452, 128 P. 739; Sanders v. State, 13 Okla. Cr. 134, 162 P. 676. In the Clemons Case, defendant was charged with an assault with intent to kill. Included in that charge are some four or five other assaults for which defendant might have been convicted. The verdict returned found the defendant "guilty of assault with a deadly weapon, as charged in the information." In the Sanders Case, being also a charge of assault with intent to kill, the jury returned a verdict finding the defendant "guilty as charged in the information of the crime of aggravated assault." In neither of these cases was the verdict sufficiently definite for the court to determine which assault defined by the statute the jury intended to convict the defendant. This objection does not obtain as to the verdict above set out. There are no included or lesser degrees of the offense of receiving deposits in an insolvent bank. All that is required in a verdict is that from an examination of it and the record, the intent and purpose of the jury may be clearly ascertained. Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824; Fowler v. State, 26 Okla. Cr. 170, 223 P. 206; Stansell et al. v. State, 30 Okla. Cr. 265, 235 P. 937; Nelson v. State, 34 Okla. Cr. 137, 245 P. 1009; Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894.

No objection was made to the verdict when returned. If the form of the verdict is not sufficiently definite and the

attention of the court is called to it at the time, an opportunity is thus given for its correction. When this is not done, the objection will be deemed to have been waived if by fair intendment and inference the intent and purpose of the jury, as expressed in their verdict, may be gathered from the record.

Several instances are set out in the brief wherein it is claimed the court during the course of the trial made prejudicial remarks. In one instance counsel for defendant requested the production of a note referred to in the evidence. The court in response said: "Certainly, I haven't got it." Defendant then asked the court to require the state to produce it, and the court said: "Go ahead, I don't know of any rules that require them to produce it." Again, while counsel for the state was examining a witness in his answer, the matter of double liability was mentioned, and the following took place:

"* * * Mr. Crump: The double liability is not a part of this transaction?

"The Court: I don't see anything funny about this; sit down, Mr. Crump.

"Mr. Crump: I except, Mr. McIntosh is trying to keep—

"The Court: Sit down.

"Mr. Crump: I will have to sit down if you order me to.

"The Court: Go ahead. * * *"

At another point in the trial this occurred:

"* * * Mr. McIntosh: Q. The jury will observe that all of this—

"Mr. Crump: Object to that.

"The Court: You've been doing that all day.

"Mr. Crump: I don't know that I have, but I object to his doing it.

"The Court: You spent about six hours at it to-day.

"Mr. Crump: I except to the remarks of the court that I spent six hours saying things to the jury that was not correct.

"The Court: You may except. * * *"

Again a colloquy arose in reference to a question on cross-examination by the state, in these words:

"* * * Mr. McIntosh: I am trying to get the facts.

"Mr. Crump: You are trying to confuse them.

"The Court: I don't want to hear any of this foolishness. Go ahead. * * *"

Some other slight matters were set out as claimed unfair treatment by the trial judge. This court has uniformly said that a person accused of crime, whether guilty or innocent, is entitled to a fair and impartial trial; that the trial judge shall not comment upon the weight of the evidence, the credibility of the witnesses, or otherwise indicate his opinion as to the guilt or innocence of a defendant. We have repeatedly reversed cases for comments of the trial court which might indicate the disapproval of the judge of counsel or witnesses, or a defendant. The trial of one charged with a crime is a serious matter. The trial judge should not permit himself to be facetious or lacking in courtesy. A proper exercise of judicial temperament will render unnecessary any contention with counsel. The statement of the court when the request for the production of a note was made, that, "Certainly, I haven't got it," is lacking in dignity.

The direction to counsel for defendant to be seated while the state counsel was examining a witness was in the exercise of a proper control of the proceeding. Counsel had not objected to the introduction of evidence, but had interposed a statement which called for an interposition of the court. The colloquy between court and counsel that he had been saying things to the jury was improper. It is the

duty of counsel to object courteously, to any testimony he may for any reason deem inadmissible. When the objection is made, it is the duty of the court to rule; counsel, if he choose, may then except. It is impossible, however, in the course of a lengthy trial, where the zeal of parties and counsel tends to cause them in some instances to overstep the line of decorum and propriety, to in all cases refrain from becoming testy, particularly where the case is prolonged, the record voluminous, and the questions of law and fact often extremely technical. The duty of the court is difficult. In such case he is a mediator between sharply contested interests, urged by skillful advocates, and it is natural that there should occasionally be some break in the orderly procedure that should be observed, or some statement not strictly judicial. To warrant a reversal, however, the lapse should be sufficiently serious as to have probably materially prejudiced the accused. The matters complained of here are not, we think, of such gravity that they affected the result of the trial or prevented defendant from having a fair and impartial trial.

That the verdict is excessive is argued among the concluding assignments of error. In view of the entire record, we have reached the conclusion that the verdict is excessive. The record does not show a case of looting the bank by defendant for his own benefit, but rather a continuation to operate it in violation of the law after it had become clearly insolvent.

Justice requires that the punishment assessed should be reduced to confinement in the state penitentiary for a term of two years and by a fine of $2,500, and, as modified, the judgment is affirmed.

DOYLE, P. J., concurs.

DAVENPORT, J., absent, not participating.