COMMONWEALTH *vs.* JAMES T. LEE.

Suffolk. April 1, 1889. — May 9, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*False Pretences — Indictment — Mortgage — Merger — Knowledge.*

One who obtains goods to be delivered to him from time to time by giving a mortgage of personal property which he falsely represents that he owns, is guilty of obtaining goods by false pretences, under the Pub. Sts. c. 203, § 59, the false pretence being a continuing one, and applicable to each delivery of goods.

An averment in an indictment for such an offence that goods bought were obtained by the false statement on the part of the buyer that he was the owner of certain property, upon which he gave a mortgage to the seller, thereby inducing him to part with the goods, is a clear and sufficient charge of obtaining goods on false pretences, such false pretence being the direct, and not the remote, means of obtaining the goods, even if they would not have been delivered but for the giving of the mortgage.

At the trial of such an indictment there was evidence that the seller parted with the goods on the strength of the buyer's "statements and the mortgage," which statements were false; and that the seller had been warned by the true owner not to deal with the buyer with respect to such property. The presiding judge refused to rule that there was no evidence to support the charge as laid, or that the false pretence was merged in the mortgage, or that, if the seller had the means of knowing that the property was another's, the buyer could not be convicted. *Held,* that the defendant had no ground of exception.

Upon such an indictment it is only necessary to prove that some definite portion of the goods were obtained by means of the alleged false pretence.

INDICTMENT for obtaining goods by false pretences, alleging that the defendant, "with intent to cheat and defraud Worthen T. James, and with the view and intent, by means of the false pretences and representations hereinafter set forth, to effect the sale by said Worthen to said Lee of the property and goods of said Worthen hereinafter set forth, and to obtain and get into his, said Lee's, hands and possession the property, goods, and chattels of said Worthen, hereinafter mentioned, upon credit and with the intention not to pay for the same, did then and there unlawfully, knowingly, and designedly falsely pretend and represent to said Worthen that he, said Lee, then and there owned in his own name and right" three horses, a wagon, and a harness; "that all and each of said articles of property were then and there free and clear from all incumbrances, and that he, said Lee, was then and there the lawful owner of them; that he, said Lee, then and there had good right to convey said articles of property to said Worthen by way of mortgage, to secure him, said Worthen, from loss, by reason of his, said Lee's, failure and neglect to pay for certain articles of property here-inafter set forth, which he, said Lee, then and there desired to purchase and obtain from said Worthen upon credit, and said Lee then and there asked and requested said Worthen in con-sideration thereof then and there to sell and deliver to him, said Lee, upon credit," beer in barrels and bottles, "and then and there to take and receive from him, said Lee, as security to him, said Worthen, for the payment for said last mentioned articles of property by him, said Lee, to him, said Worthen, his, said Lee's, mortgage upon and of said articles of property first above set forth, and the said Worthen, then and there believing the said false pretences and representations so made as aforesaid by the said Lee, and being deceived thereby, was induced by rea-son of the false pretences and representations so made as aforesaid to sell and deliver, and did then and there sell and deliver to the said Lee upon credit," certain barrels, kegs and cases of bottles of beer; "all of the property, goods, wares, merchandise, chattels, and effects of said Worthen, and all of which he, said Lee, did then and there receive from said Worthen, as and for such sale upon credit as aforesaid; and to receive, and did then and there receive, as such security for the payment by him, said Lee, to

him, said Worthen, for said last mentioned articles of property, by the due delivery thereof then and there made to said Worthen by said Lee, his, said Lee's, mortgage upon and of said first mentioned articles of property to him, said Worthen; and the said Lee did then and there receive and obtain the said property, moneys, goods, merchandise, chattels, and effects of the said Worthen by means of the false pretences and representations aforesaid, and with intent to cheat and defraud: whereas, in truth and in fact, he, said Lee, did not then and there own in his own name and right the said articles of property, to wit, said horses, wagon, and harness as aforesaid; and said last mentioned articles of property were not then and there free and clear from all incumbrances, and he, said Lee, was not then and there the lawful owner of them as aforesaid; and he, said Lee, did not then and there have good right to convey said articles of property to said Worthen by way of mortgage to secure him, said Worthen, from loss by reason of his, said Lee's, failure and neglect to pay for certain articles of property, which he, said Lee, then and there desired to purchase and obtain from said Worthen upon credit as aforesaid; all of which he, said Lee, then and there well knew."

In the Superior Court, before the jury were impanelled, the defendant filed a motion to quash the indictment for the following among other reasons: "1st. Because the said indictment does not sufficiently allege that Worthen T. James, the person to whom the alleged false pretences were made, sold and delivered the property mentioned therein by reason of said false pretences, nor that said false pretences were the inducement for said James to part with said property. 2d. Because said false pretences, as alleged, show that they were an inducement merely to the giving of the mortgage, and that the obtaining of the said property is too remotely connected with said false pretences." *Dunbar*, J., overruled the motion.

At the trial, James testified that the defendant came into his store in Boston on November 20, 1885, and upon being told that he could not have more goods on credit because of the amount of his previous indebtedness to James, stated that he had property, and that he would give him security, and finally agreed to give him a mortgage on the horses, wagon, and harness; that

the defendant represented that he was the owner of such property, and that it was free from incumbrances; that the defendant thereupon gave him a mortgage upon the property, and he delivered to him the beer in packages as recited in the indictment; and that he believed the statement made by the defendant relative to the ownership of the property, and was induced by such representations to deliver such beer to the defendant.

It appeared in evidence, that the horses, wagon, and harness were not the property of the defendant, as he at the time of the making of the representations knew. It further appeared in evidence, without objection, that the defendant subsequently obtained from James other property which he did not pay for, and that, when asked by James if he wished to pay for the goods, the defendant said, "No, let them go in on the mortgage."

On cross-examination, James testified that, in letting the defendant have the beer, he relied on the defendant's "statements and the mortgage, — the mortgage was the security"; and that the bargain which he made with the defendant was that he should take the mortgage for three hundred dollars, which was to include one hundred dollars already owed him by the defendant, and two hundred dollars' worth of goods which the defendant was to take as he might wish them.

There was also evidence tending to show that James had been warned by the true owner of the property mortgaged not to deal with the defendant with reference to it, as the property did not belong to him, but belonged to such owner.

At the close of the evidence, the defendant asked the judge to rule that the evidence adduced did not support the false pretences charged in the indictment; but the judge declined so to rule, and the defendant excepted.

The defendant also asked the judge to instruct the jury, among other things not material, as follows:

"2. If the jury find that, before the making of the false pretences, James knew, or had means of knowing, that said property was not the defendant's, this indictment cannot be sustained.

"3. If the jury find that, before the making of the alleged false pretences, James believed the said property to be the property of the defendant, so that the making of the alleged false

pretences was merely a restatement of what James previously believed to be true, then this indictment cannot be sustained.

"4. If the jury find that the bargain in which the alleged false pretences were made, and its object, were to secure James for a past debt and a future credit, then the defendant cannot be convicted under this indictment.

"5. What passed between the parties by parol in relation to the title to the property merged afterwards in the mortgage, and the evidence, show a mere breach of covenants in the mortgage, and unless the jury find that some other false pretences were made besides those to which the covenants in the mortgage relate, the defendant cannot be convicted."

The judge gave the second request, omitting the words "or had means of knowing"; the third, adding the words, "This is necessarily so, because, if James believed the property to be owned by the defendant .previous to the statement relied upon, James could not have relied upon the statements"; and the fourth, adding the words, "If the defendant, at the time such representations were made, obtained any of the property charged in the indictment from said James by reason of the alleged false. pretences, the indictment might be sustained." The judge declined to give the fifth instruction requested, and upon that subject instructed the jury that the defendant could not be convicted by reason of breach of the covenants in the mortgage; but if they found that the defendant made the false statements relied upon, he would not be less liable because those statements were afterwards reduced to writing in the mortgage.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. B. Orcutt*, for the defendant.

*A. J. Waterman*, Attorney General, *& H. A. Wyman*, Second Assistant Attorney General, for the Commonwealth.

DEVENS, J. 1. The motion to quash the indictment was properly overruled. The allegation that the goods were obtained by the false statement, on the part of the defendant, that he was the owner of certain property upon which he gave a mortgage to the seller, one James, thereby inducing him to part with his goods, was a clear and sufficient charge of· obtaining goods by false pretences. If, after this false pretence

that the defendant was the owner of the property to be mortgaged, the mortgage was given, even if the goods would not have been delivered to the defendant but for this fact, the false pretence was the direct, and not the remote, means by which the goods were obtained. If the seller had not believed in this pretence, he would have deemed the mortgage worthless, and would not have parted with his property. *Commonwealth* v. *Coe*, 115 Mass. 481. In *Commonwealth* v. *Lincoln*, 11 Allen, 233, it was held that one who obtains money by means of false pretences that he owns certain personal property, which he mortgages to the lender as security for the loan, could properly be convicted of obtaining money by false pretences. The fact that in the case at bar the goods were to be obtained from time to time, and not all at once, can make no distinction between the cases, as the false pretence was a continuing one, and applicable to each delivery.

2. The ruling requested, that the evidence did not support the charge of false pretences as laid in the indictment, should not have been given. In distinct terms, the witness James testified that he parted with the goods on the strength of the statement made by the defendant, and also on the " statements and the mortgage," which, in substance, was saying that he relied on the mortgage because of the statements of the defendant which preceded or accompanied it. These statements the jury have found to be false pretences. If James parted with his property solely on the strength of the security of the note and mortgage, that is, independently of these statements, they were instructed to acquit the defendant. For similar reasons, the fifth instruction requested should not have been given. While the defendant was not to be convicted by reason of the covenants in the mortgage as to the ownership of the property, if he in fact made the false statements relied upon to induce the seller to part with his property on the security of the mortgage, he would not be the less liable because they were subsequently reduced to writing therein.

3. The instruction, that the indictment could not be sustained if James, the seller, had the means of knowing that the property was not that of the defendant, should not have been given. He was entitled to rely on the statements of the defendant, and was

not further put upon his inquiry as to a motive which was within the knowledge of the defendant, and as to which he himself knew nothing. If he knew that the defendant was not the owner, the instruction as given was that the statement could not be deemed a false pretence. Nor is any such case presented as that which exists where parties alike know whether an affirmation is true or false, being equally cognizant of, or personally connected with, the facts to which it relates. *Commonwealth* v. *Norton*, 11 Allen, 266.

4. The fourth instruction requested by the defendant was given. The addition that, if the defendant, "at the time such representations were made, obtained any of the property charged in the indictment from said James by reason of the alleged false pretences, the indictment might be sustained," was correct. It compelled the Commonwealth to show that some definite portion of the property charged in the indictment had been obtained by the alleged false pretences. This was all that was necessary to sustain the indictment. *Commonwealth* v. *Stone*, 4 Met. 43. *Commonwealth* v. *Coe*, 115 Mass. 481.

*Exceptions overruled.*