## BEN H. MASON v. STATE.

No. A-3980.   Opinion Filed March 10, 1923.
(212 Pac. 1028.)

(Syllabus.)

1. **Preliminary Complaint—Technical Rules of Pleading not Applicable.** Technical rules of pleading need not be adhered to in the preliminary complaint to the same extent as may be required in the information in the trial court.

2. **Indictment and Information—Information Charging Substantially Same Offense as Preliminary Complaint Sufficient.** An information is sufficient where it charges substantially the same offense charged in the preliminary complaint.

3. **False Pretenses—Information—Sufficiency of Description of Property Obtained.** The rule that the money or thing of value obtained by means of any false pretense should be as particularly described as would be necessary in an information charging larceny held not to apply to section 2146, Comp. Stat. 1921.

4. **Indictment and Information—Words Construed in usual Acceptation Except Where Different Fixed Legal Significance.** Words used in an indictment or information must be construed in their usual acceptation in common language, except words and phrases having a different fixed legal significance.

5. **False Pretenses—Definition of "Money" Obtained.** In the sense here used, "money" means gold and silver coin, treasury notes, bank notes, and other forms of currency in common use, and every deposit which any person owning the same is entitled to withdraw in money on demand.

Appeal from District Court, Carter County; Thos. W. Champion, Judge.

Ben H. Mason was convicted of obtaining money by means of false and bogus instruments, and he appeals. Affirmed.

Bass & Hardy, J. H. Mathers, J. B. Champion, and H. H. Brown, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Ben H. Mason, plaintiff in error, by a verdict of a jury rendered November 19, 1920, was found guilty of passing bogus instruments, as charged in the information, and his punishment was fixed at confinement in the state penitentiary for a period of one year. From the judgment rendered on this verdict he appeals.

A preliminary complaint in this case was filed October 11, 1919, in the county court of Carter county, sitting as an examining magistrate, in which the charging part of such complaint was as follows:

"He, the said Ben H. Mason, did then and there willfully, unlawfully, fraudulently and feloniously, with the intent then and there to cheat and defraud, and by means of a certain false and bogus instrument, to wit, claim against the city of Ardmore, Okla., a municipal corporation, obtain and receive of and from the said city of Ardmore the sum of $6,362.45 good and lawful money of the United States of America, with the willful and unlawful and fraudulent and felonious intent to convert the same to his own use and benefit, and to deprive the true owner of the use thereof, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state."

On the 5th day of May, 1920, there was filed in the district court of Carter county in this case an information the material parts of which are as follows:

"That on or about the 21st day of January, 1919, one Ben H. Mason did then and there willfully, unlawfully, fraudulently, and feloniously, with the fraudulent and felonious intent then and there to cheat and defraud, and by means and

use of certain false and bogus instruments in print and writing, which he, the said Ben H. Mason, then and there well knew to be false and bogus, in the said county and state of Oklahoma, receive and obtain money from the city of Ardmore, Okla., a municipal corporation duly authorized and existing under and by virtue of the laws of the state of Oklahoma, the sum of $6,362.45 good and lawful money of the United States of America, and of the value of $6,362.45, which said instruments aforesaid are in words and figures as follows:

(Followed by a minute description of the several instruments, consisting of drafts, bills of lading, and certificates of account, alleged to be false and bogus, all of which was concluded as follows:)

"City of Ardmore, Ardmore, Oklahoma. Accounts Payable, to First National Bank, Dr. Charge for 1918, Additional Water Supply Fund.

| Month. | Day. | Year | For | | |
|--------|------|------|-----|---|---|
| Jan. | 21 | 1919 | Car No. Soo ............40363 | $1,590.81 |
| | | | Car No. PRR ............88965 | 1,590.51 |
| | | | Car No. MC ............48907 | 1,590.62 |
| | | | Car No. NYC ............261707 | 1,590.51 |
| | | | | $6,362.45 |

"Contrary to the form of the statutes in such case made and provided and against the peace and dignity of the state."

The plaintiff in error, herein designated the defendant, moved to quash the information filed in the district court on the grounds:

First. That the allegations are insufficient to constitute a crime.

Second. That the defendant was held in the examining magistrate's court for one offense and placed on trial in the district court for another offense, and that he was not accorded a preliminary examination, nor did he waive such

examination, as a condition precedent to being put upon trial as charged in the district court. This motion was by the court overruled.

Before the introduction of any testimony the defendant objected to the introduction of evidence for the reason that the information filed in the district court stated a different offense than that contained in the charge filed, and upon which the trial was had in the examining magistrate's court. This objection was likewise overruled.

To us it seems manifest that the preliminary complaint was based upon what is commonly known as the "bogus check statute" (section 2146, Comp. St. 1921). The language "with the intent then and there to cheat and defraud by means of a certain false and bogus instrument" indicates such purpose on the part of the prosecutor. The information filed in the district court pleads the facts more definitely and in greater detail, by setting out copies of the instruments at length and in detail. The complaint in the examining magistrate's court we think was sufficient; the technical rules of pleading need not be adhered to in the preliminary complaint to the same extent as may be required in the information in the trial court. We conclude that the objections based on the insufficiency of the preliminary complaint are therefore without merit. It has been frequently held by this court that an information is sufficient where it charges substantially the same offense charged in the preliminary complaint. Sayres v. State, 10 Okla. Cr. 195, 135 Pac. 944; Tucker v. State, 9 Okla. Cr. 587, 132 Pac. 825; Ponosky v. State, 8 Okla. Cr. 116, 126 Pac. 451; Agent v. State, 18 Okla. Cr. 281, 194 Pac. 237; 16 Corpus Juris, "Criminal Law," § 505 et seq.

The proof in support of the information shows that the defendant by deception obtained from the city of Ardmore a

city warrant in the sum of $6,362.45 by means of a false, bogus, and duplicate claim against that city for material that had been previously paid for by the city, material used in the construction of its municipal water system. The defendant, by his agent, deposited this warrant, so fraudulently obtained, in the First National Bank of Ardmore, whose cashier was the city treasurer. The sum of money represented by the warrant was by agreement with the city treasurer deposited to the credit of the defendant in this bank, and the funds so deposited were checked upon by the defendant, and from time to time drawn out for his use and benefit.

The defendant contends that there was a fatal variance between the proof offered and the allegations of the information, in that the proof shows that the property received by the defendant was a city warrant, deposited in the bank to the credit of the corporation of which defendant was the fiscal manager, and that the information charges defendant with obtaining "money"; that credit in a bank, through the medium of a city warrant, is not "money" within the meaning of the statute or the averments in the information. The statute (section 2146, Comp. St. 1921) under which this prosecution was maintained is as follows:

"Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing, by means or by the use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check or by any other written or printed or engraved instrument or spurious coin or metal, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding 7 years."

A reading of this statute and the other sections of the "false pretense" chapter of our Criminal Code makes it manifest that it was the intention of the lawmakers by the enactment of this particular section to cover all manner of fraudulent schemes to extract property belonging to others from them by means of tricks or deceptions, including all subtle, genteel methods, however perpetrated, equivalent to larceny by fraud. The blanket provisions of this statute indicate that it was not the intention of the lawmakers to limit its application to any refined technical construction of the words or terms used. The gist of the inquiry is: Did this defendant, by fraud and deception, take from the city of Ardmore, without any right, its funds or property for his own use?

The record shows that the defendant was the fiscal agent for the construction company, and the only person authorized to draw on its bank account, and that the proceeds of this fraudulent warrant were deposited in the bank and from time to time checked out by the defendant. In construing an embezzlement statute and the information based upon it, Judge Matson, in the case of Fulkerson v. State, 17 Okla. Cr. 103, 189 Pac. 1092, quoting with approval from 9 R. C. L. 1297, said:

"Nor is there a variance between an allegation of embezzlement of public moneys of a county and proof that the defendant, without obtaining possession of the actual money, drew checks against the account to which the moneys were deposited, which were duly presented and paid. The reasons advanced for this holding are (1) that when a check is drawn there is a segregation of money from the general funds of the bank, and for a space of time, however short, the money of the depositor is being dealt with, and (2) that the word 'money' in embezzlement statutes relating to public funds is used in a generic and not in a specific sense, that is, that it includes all actual moneys, credits, and funds of every kind belonging to the public."

In the Fulkerson Case the accused acted in a dual capacity of cashier of a bank and treasurer of the school board from whom the funds were diverted. Here the treasurer of the city of Ardmore was cashier of the First National Bank of Ardmore, and, as cashier, passed the proceeds of the warrant here involved to the credit of the defendant as a deposit, and later the defendant drew checks on this deposit. Quoting further from the Fulkerson Case, an excerpt taken from the opinion in Territory v. Hale, 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551, citing Bank v. Millard, 10 Wall. 152, 19 L. Ed. 899:

"But when a check is drawn there is a segregation of that much money from the general funds of the bank, which becomes the property of the depositor. This may be placed to the credit of the payee of the check, or it may be handed him in money, or otherwise disposed of as the parties may elect. But for a space of time, however short, the money of the depositor is being dealt with. And so it has been held under statutes against embezzlement of money that such embezzlement is accomplished by the drawing of a check upon a bank where such money is deposited."

Construing an embezzlement statute, the court in Territory v. Hale, 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551, used the following language:

"Another view has been advanced for the same holding to the effect that the word 'money' in embezzlement statutes relating to public funds is used in a generic and not a specific sense, that is to say, that it includes all actual moneys, all credits and funds of every kind belonging to the public. We can see no impropriety in such view. The result must be salutary, and can in no way impair the rights of defendants. The holding in this case that the facts support a conviction of embezzlement of money may well rest upon either view above suggested."

It has been held by many of the appellate courts that the money or thing of value obtained by means of any false pretense should be as particularly described as would be necessary in an information charging larceny. Ordinarily that may be true; but we think this rule should not apply strictly, as it relates to this particular section of our statutes, considered separately, and in conjunction with the other provisions relating to false pretense. Section 2561, Comp. Stat. 1921, a part of our Code of Criminal Procedure, provides that the words used in an indictment or information must be construed in their usual acceptation in common language, except words or phrases having a different fixed legal significance. As an indication of what is meant by the word "money" in common language reference may be made to the standard dictionaries in common use. Our own statutes, in the chapter relating to revenue, give a good definition of the word as commonly used and understood:

" 'Money' * * * shall mean gold and silver coin, treasury notes, bank notes and other forms of currency in common use, and every deposit which any person owning the same * * * is entitled to withdraw in money on demand." Comp. St. 1921, § 9584.

The reasons given for such a construction as applied in cases charging embezzlement it seems to us apply with equal force in construing this statute relating to false pretense, and there are authorities supporting this view. People v. Whalen, 154 Cal. 472, 98 Pac. 194; 11 R. C. L. 861; People v. Clark, 256 Ill. 14, 99 N. E. 866, Ann. Cas. 1913E, 214, with citations, notes, and annotations. Be this as it may, the most common practice of drawing upon a deposit in a bank is to draw a check on the deposit and receive the amount named in the check in currency. The testimony in this case shows that defendant drew checks against this deposit, and the presump-

tion is that he received "money" of the amount designated in the several checks.

We recognize that the rules of construction as above announced and applied have not been everywhere followed in all cases; but, considering the purpose of this particular statute, express and implied, we are impelled to hold, upon sound reason and respectable authority, that the word "money" in this instance should be construed in a generic sense, so as to include coin, currency, drafts, warrants, and other things equivalent to money by means of which the person injured was deprived of money. We think it would be an outrageous injustice to the taxpayers of the city of Ardmore to hold otherwise on the flimsy pretext that the defendant obtained credit, but, strictly speaking, no money, at the time the warrant was deposited to defendant's credit. By this false pretense the taxpayers lost this money or its equivalent, and that is sufficient.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.