# T. N. FRENCH v. STATE.

No. A-5877.   Opinion Filed July 30, 1927.
(259 Pac. 162.)

Arrington & Evans, for plaintiff in error.

J. T. McIntosh, for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the superior court of Pottawatomie county on a charge of receiving deposits in an insolvent bank, with knowledge of its insolvency, and was sentenced to serve a term of 3½ years in the state penitentiary and to pay a fine of $1,000.

The charging part of the information is as follows:

"* * * The above-named T. N. French, * * * then and there being, did then and there unlawfully, knowingly, willfully, feloniously, intentionally, and

wrongfully commit the crime of receiving deposits in an insolvent bank in the manner and form as follows, to wit: That is to say, the said defendant, T. N. French, being then and there a director and president of the Security State Bank of Wanette, a corporation duly organized and existing under and by virtue of the laws of the state of Oklahoma, engaged in transacting a general banking business at Wanette, Pottawatomie county, state of Oklahoma, did then and there, in said county and state, as such officers and directors of said bank, unlawfully, willfully, and feloniously receive and accept on deposit in said bank, * * * the sum of $155.61 in money, bank bills, bank notes, United States treasury notes, gold and silver certificates, currency, bills, checks, and drafts, the personal property of D. P. Kessler, when said bank was insolvent, the said defendant * * * then and there knew said bank was insolvent, contrary," etc.

Two assignments of error are argued in the briefs: First. That the transaction upon which the charge is predicated was not a deposit, within the meaning of the law. Second. Error in the admission of testimony prejudicial to defendant.

Considering the first proposition, the record discloses that one W. H. Dunton had made arrangements with the bank to handle cotton purchases and had put in the bank as a margin against possible loss the sum of $1,630. On December 28, 1923, the day the bank closed, he purchased from a Mr. Ford and a Mr. Kessler four bales of cotton, Ford, the tenant, owning three-fourths and Kessler, the landlord, one-fourth. When this cotton was purchased, Dunton, the buyer, received the cotton tickets from Kessler and Ford, indorsed his name thereon and the price of the cotton per pound, which ticket was then taken to the bank, where the cashier figured the amount due for the four bales of cotton and gave Ford a deposit slip for three-fourths of the proceeds and Kessler a deposit slip for one-fourth, and delivered the deposit slips to Ford and Kessler, respectively. The proceeds due Ford was also entered on his passbook, and

the individual ledger sheet was credited with the amount of the proceeds due Kessler, and the account of Dunton was charged with the aggregate amount. Dunton at the time was overdrawn on his cotton account.

The statute, under which the prosecution was had, is section 4128, Comp. St. 1921, and is:

"No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills, checks or drafts, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $5,000 or by imprisonment in the penitentiary not exceeding five years, or by both such fine and imprisonment."

Section 9584, Comp. St. 1921, defines money; section 7854, defines a note; section 7855 defines a check; and section 7796 defines a bill of exchange.

The contention of defendant is that the cotton tickets do not fall within the definition of a note, bill, check, or draft, as designated in section 4128, supra, and that the court cannot extend the terms of a penal statute beyond its clear legal meaning, citing, Rhodes v. State, 30 Okla. Cr., 2, 234 P. 645; Ex parte Twing, 188 Cal. 261, 204 P. 1083; State v. Eberhart, 106 Wash. 222, 179 P. 853; State v. Hoffman, 110 Wash. 82, 188 P. 25; State v. Bartley, 304 Mo. 58, 263 S. W. 95; Preston v. State, 106 Neb. 848, 184 N. W. 925, and other authorities.

The state contends that the cotton tickets in question, after being signed by the purchaser, were fairly within the terms of the statute, and were in effect and substance a check by Dunton, payable to the owner and holder of the cotton ticket, and chargeable against his

account with the bank. The cotton ticket with the name of the purchaser indorsed thereon, if the naked writing itself is considered, does not fall strictly within the definition of a note, check, bill of exchange, or a draft. Is it so, in legal effect, in the manner in which it was treated by Dunton, Ford, Kessler, and the bank? The courts of several of the states have held that, where the allegation in an indictment or information is made of the accepting of a deposit of money in an insolvent bank, it is not a variance to prove a deposit of a check, which is accepted by the bank as money. Cunningham v. State, 115 Ark. 392, 171 S. W. 885; 12 R. C. L. 496; Skarda v. State, 118 Ark. 176, 175 S. W. 1190, Ann. Cas. 1916E, 586; Ellis v. State, 138 Wis. 513, 119 N. W. 1110; 28 L. R. A. (N. S.) 490, 131 Am. St. Rep. 1022; State v. Salmon, 216 Mo. 466, 115 S. W. 1106.

The cotton ticket or tickets were not in the form of a check, but they showed the weight of the cotton, the price per pound, and bore the signature of the buyer. They were accepted by the bank as an order from the buyer, Dunton, to the bank to pay to the holder of the tickets the amount due thereon and to charge the same against the account of the purchaser. The credits were given the holder of the tickets and a debit made against the account of the buyer. What more would have been done by a check in the ordinary form? The bank by accepting it as cash and giving credit created the relation of debtor and creditor between the bank and depositors. Upon the giving of the credit, the amount was subject to the check of the depositors, and they could have demanded the cash instead of the credit given. We fail to see what difference there is between the transaction that took place than if the bank had passed out on the cotton ticket the cash to the holders of the ticket, and they had immediately passed the same back for de-

posit in the bank and had received credit therefor. After this ticket had been accepted by the bank as cash and the credit given, it cannot be said that this was merely a deposit of cotton tickets and not a deposit of a check or of cash. In the case of State v. Salmon, supra, the Supreme Court of Missouri said: * * *

"We are unable to reach the conclusion that before this money could be treated as a deposit it was essential, first, that the cashier should count him out the entire amount of money called for in the check for the purpose of allowing him to retain what ready money he desired, and then return the balance for deposit in the bank. This, in our judgment, would be a useless formality, in fact would have been simply playing and trifling with a purely business transaction. This transaction cannot be treated otherwise than a payment of the check in favor of James Paul. He had the right to demand an actual delivery of the amount of money called for in the check, or he could receive part of it and allow the balance to remain on deposit with the bank, and it is manifest, if James Paul accepted such check in payment of a debt due by the drawer, presented the check to the bank for payment, requesting that they pay him in part cash and give him credit for the remainder, the debt of the man who gave him the check was fully satisfied, and he must be treated as having received a part of the money in cash and the balance he deposited with the bank."

In the case of Cunningham v. State, supra, the Supreme Court of Arkansas held:

"When the cashier in the instant case received the check he charged the account of Norris with the amount of the check and credited Harris with the amount thereof. It is claimed by counsel for the defendant that because no new money came into the bank that there was no violation of the statute. The money was in the bank, or was supposed to be there, and the transaction was considered and treated as though the cashier had actually paid over the money to Harris, and that Harris had immediately redeposited it in the same bank. The transaction was not essentially different from what it would have been had the whole amount of the check

been received from other sources and then deposited in the bank (citing authorities)."

The other assignment of error, i. e., the admitting of incompetent and prejudicial evidence, is directed to testimony given by certain witnesses. J. A. Morphew testified that he was a farmer, had known defendant many years; that his son, John Morphew, was in a hospital at Sulphur and had on deposit $2,060 in the failed bank; that the son had given his father a check for the money. In July before the bank failed in December, this check had been deposited in another bank. That John Neal and O. A. Nation, officers of the failed bank, came to witness' home and told him that they could not pay the check; that to do so would break every bank in the country, and that some of the officers in the bank then went to the son and prevailed on him to permit the money to remain in the bank; that later in September defendant said to witness:

"J. A., I come out to tell you that we reorganized and put in $50,000 new capital and taken out this worthless paper. * * * You can tell the boy that we got the cleanest little bank in the country. * * *"

The witness W. D. Brown testified that he had money in the bank at the time it failed, and that he also owed the bank a note of $250 and had made payments amounting to $143.06 to be credited on the note, which credits had not been made; that this payment was made on December 26, and the bank closed on December 28. A. L. Kienzle testified that he owed the bank a note in the sum of $1,000, that on December 27, the day before the bank closed, he gave a check on his account for $400 to be credited on the note; that this was not credited and the check was not charged against his account. It appears that the notes owing by these parties to the bank had been rediscounted, or placed as security at a Kansas City bank, and were not in the possession of the failed

bank at the time. Apparently these different items of evidence were offered to prove the insolvency of the bank at the time the deposit was received or just prior to that time, and to show that defendant had knowledge of this condition. There is a line of cases holding that in the trial of one charged with receiving deposits in an insolvent bank, the admitting in evidence of the making of deposits by other persons is inadmissible as tending to prejudice the jury against the accused. Such evidence has no relation to the particular deposit, and the mere making of other deposits at about the same time would not be material unless there is some circumstance connected with such other deposit which tends to cast light on the transaction or tends to prove some material matter. People v. Paisley, 288 Ill. 310, 123 N. E. 573; State v. Munroe, 273 Mo. 341, 201 S. W. 100; State v. Burlingame, 146 Mo. 207, 48 S. W. 72; Brown v. State, 68 Tex. Cr. R. 269, 151 S. W. 561.

The state here contends that the testimony of Morphew, Kienzle, and Brown is admissible as tending to show that in July, before the bank closed in December, it was unable to meet the demand of its creditors in the due and ordinary course of business, was unable to pay the check drawn by one of its depositors, and that this condition was known to the defendant.

In State v. Sattley, 131 Mo. 464, 33 S. W. 41, it is held:

"On the trial of a bank officer for receiving deposits knowing that the bank was insolvent, evidence that depositors demanded their money, and of the refusal of the bank employees to pay them, is admissible, whether or not defendant personally heard the demands, to show the failure of the bank to meet its obligations in the ordinary course of business."

This court in the case of Appelget et al. v. State,

33 Okla. Cr. 125, 243 P. 251, in defining when a bank is insolvent, said:

"A bank is 'insolvent' within the meaning of the criminal law: First, when the actual cash market value of its assets is not equal to its debts and liabilities. Second, when it is unable by pledging its assets and credit to raise, within a reasonable time, the money to meet its debts, obligations, and liabilities, and to pay its depositors in the ordinary course of business."

It is generally held that, on the trial of an officer of a bank for receiving deposits with knowledge of the insolvency of the bank, other transactions touching the solvency of the bank are admissible although such evidence may tend to establish some other offense. State v. Welty, 65 Wash. 244, 118 P. 9. The items of evidence objected to, even if not admissible under the strict rule of evidence, present no such prejudice as would require a reversal.

Counsel for defendant have at considerable length and very forcefully argued that it is not shown by the evidence that defendant knew the bank was insolvent, but does show that he believed that it was solvent and that his entire conduct of its affairs was honest and in an endeavor to save it and prevent the loss to the community that would follow the closing of the bank; that what he did was virtually under the direction of the state banking department, and under all the circumstances shown by the record the acts of defendant were not criminal. However, it is not contended that the evidence is not sufficient to sustain the verdict and judgment. This contention is largely a question of fact and to that extent is for the jury. We have examined the record with care and find that the evidence sustains the verdict and judgment. We find no error that prevented defendant from having a fair trial or that would warrant this court in reversing this case.

The case is affirmed.

DOYLE, P. J., concurring.

DAVENPORT, J., absent, not participating.