## DELBERT RHODES v. STATE.

No. A-8885.   Sept. 13, 1935.

(49 Pac. [2d] 226.)

2

Mathers & Mathers, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Delbert Rhodes, was convicted in the district court of Oklahoma county upon an information charging that in said county on the 25th day of April, 1934, he did commit the crime of "obtaining property under false pretenses," in manner and form as follows:

"That is to say, the said defendant, in the county and state aforesaid and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully, wrongfully and feloniously obtain from R. J. Jenkins one check of the value of $325, good and lawful money of the United States of America, by means and use of false and fraudulent representations, that is to say, the said defendant represented to the said R. J. Jenkins that one Chevrolet coupe automobile, 1933 model, Motor No. 3953-506, Oklahoma 1934 license No. 416-295 was free from all incumbrances, and the said R. J. Jenkins, relying upon the said representations of the said defendant and believing them to be true part with and delivered to the said defendant the said check of the value of $325, when in truth and in fact there was a mortgage in the amount of $335 against the above-described automobile to the South-

ern Bond and Investment Company of Chickasha, Okla., all of which said defendant well knew, and the said defendant knowingly made each and all of said false and fraudulent representations with the unlawful, willful, wrongful, fraudulent and felonious intent to cheat and defraud the said R. J. Jenkins out of said check as aforesaid, said mortgage as above described being unpaid and an encumbrance upon the said above-described automobile contrary to, etc."

Upon the trial, the jury returned their verdict finding "the defendant guilty of the crime of obtaining property under false pretenses, as charged in the information, and fix his punishment at 30 days in the county jail and a fine of $500."

A motion for a new trial was duly filed, presented, and overruled. On October 6, 1934, the court rendered judgment in accordance with the verdict.

The assignments are: Error in overruling defendant's demurrer to the information; error in overruling defendant's demurrer to the evidence; that there is a fatal variance between the allegations and the proof, and that the evidence is insufficient to sustain the verdict.

It appears the information was drawn under section 2087, St. 1931, which reads as follows:

"Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

Appellant below, so far as the record discloses, did not in any way question the sufficiency of the information,

in the trial court, there was no demurrer interposed thereto, no objection to the introduction of evidence was made, and no motion in arrest of judgment was filed.

Appellant now seeks to attack the information upon the ground that, failing to use the word "designedly," the information is insufficient to charge an offense.

An information cannot be attacked upon appeal unless some foundation was laid therefor before final judgment was rendered. The defendant may take advantage of a defective information by demurring thereto before the trial, by objecting to the introduction of evidence on the ground that the facts stated do not constitute a public offense, or by motion in arrest of judgment.

The function of a demurrer is to defeat the information without a trial whenever it appears that it is subject to any one or more of the five objections named in the statute, section 2948, St. 1931. These objections can be taken only by demurrer—

"Except that the objection to the jurisdiction of the court over the subject of the indictment or information, or that the facts stated do not constitute a public offense, may be taken at the trial, under the plea of not guilty, and in arrest of judgment." Section 2956, St. 1931. Stone v. State, 12 Okla. Cr. 313, 155 Pac. 701; Franklin v. State, 17 Okla. Cr. 348, 188 Pac. 686.

Under this provision, if it appears that the facts stated do not constitute a public offense, an objection to the introduction of evidence on that ground is sufficient to raise the question. After the verdict was rendered, when motion was made for a new trial, no claim was asserted that the information was bad for any reason.

The record shows that at the close of the evidence appellant demurred thereto and asked the court to advise the

jury to render a verdict of not guilty upon the ground that the evidence is insufficient to sustain a conviction.

This motion challenged the evidence, not the information. There was a claim of variances, but no claim that the information did not warrant a conviction. The motion was made upon specific grounds which did not include, or necessarily involve, an objection to the information. It follows that we cannot consider the questions argued as to the insufficiency of the information because they were not raised as authorized by statute. This court cannot consider questions that were not raised in the trial court as authorized by statute, unless fundamental error prejudicial to the substantial rights of appellant is apparent. Clark v. State, 11 Okla. Cr. 494, 148 Pac. 676; McGaugh v. State, 12 Okla. Cr. 96, 152 Pac. 140.

In State v. Pickett, 174 Mo. 663, 74 S. W. 844, the Supreme Court of Missouri held:

"That an information charging that defendant did 'willfully, unlawfully, and feloniously, with intent to cheat and defraud,' etc., obtain money, etc., but failing to use the word 'designedly,' or other word equivalent to or broad enough to include it, was insufficient."

In State v. Taylor, 44 S. D. 332, 183 N. W. 998, the Supreme Court of South Dakota held that:

"Since designedly is the doing of an act with a purpose, or intention, or specific design, and the allegation that he knowingly employed a false token sufficiently charges design." And see State v. Avery, 111 Kan. 588, 207 Pac. 838, 23 A. L. R. 453.

The failure to use the word "designedly" is not a fatal defect where other words of the same import or broad enough to include it are used.

The information alleges all the essential elements of the offense defined by section 2087, supra.

In framing an information the statute should be carefully followed. It is enough in this case to hold that the information states facts sufficient upon which to base the judgment of conviction.

It appears that R. J. Jenkins, a dealer in secondhand automobiles in Oklahoma City, had employed appellant at one time; afterwards appellant became a dealer in used cars in the town of Mountain View, and early in April he purchased from R. J. Jenkins a couple of cars, paying therefor in checks, one for $275, one for $40, and one for $10. These checks were drawn on the First National Bank of Mountain View. Jenkins indorsed the checks and turned them to Wallace Campbell, who deposited them with the Tradesmen's National Bank in Oklahoma City. The checks were returned marked "insufficient funds." On April 24, 1934, appellant came to Oklahoma City, driving the automobile described in the information and offered to sell this car to Jenkins for $325 and take in payment therefor his dishonored checks. Not having certificate of title, Mr. Jenkins refused to trade. Appellant returned the next day with certificate of title, and Mr. Jenkins took the car and gave to appellant his checks.

R. J. Jenkins testified that he asked appellant if there was any incumbrance or mortgage on the car, and appellant said that he sold the car new to C. H. Whittington, his brother-in-law, who paid cash for it, and appellant said there was no incumbrance or mortgage upon the car, that he, witness, believed that statement, and, relying upon it as true, gave to appellant said checks in payment for the car. That a few days later Mr. Sullivan called him from Chickasha by telephone and said that he had been to Moun-

tain View and was informed that Delbert Rhodes had sold the car to him, and that he had a mortgage on the car. That he went to see Mr. Sullivan, examined the mortgage, and told him he could come and get the car.

Bill Sullivan testified that he was assistant manager, Southern Bond & Investment Company at Chickasha, and that his company held a mortgage on a Chevrolet coupe, 1933 model, produced and identified the mortgage, and it was received in evidence. That on April 25th there was $335 balance due on note and mortgage, executed November 3, 1933, C. H. Whittington mortgagor.

C. H. Whittington testified that he had known Delbert Rhodes six or seven years but was not related to him in any way. He identified the title of the automobile in question and said he had bought the car from the Lucas Chevrolet Company at Anadarko; that Delbert Rhodes was the salesman; that he executed the mortgage introduced in evidence. That a day or two before he sold Delbert Rhodes the car he told him he wanted to sell the car to pay the balance he owed on it, and Rhodes told him he could take it to Oklahoma City and sell it to Mr. Jenkins. That at that time there was a balance of $334 due on his note, and he told Delbert Rhodes that he owed this balance to the Southern Bond & Investment Company at Chickasha. That Rhodes came back from Oklahoma City and he assigned the title to him. Rhodes again took the car to Oklahoma City to sell it to take care of the payments due on the car. The next day he came back to Mountain View and there paid him $30 in cash and told him that there was approximately $20 more against the car than he thought there was; that Mr. Jenkins was waiting at Chickasha for him to call back and tell him whether it was all right for

him to go ahead and pay off the note and mortgage on on the car. On cross-examination he stated:

"I was supposed to get $50; instead of that I got $30, because there was more against the car that I thought there was."

Wallace Campbell testified that he received the checks given by Delbert Rhodes from Mr. Jenkins and deposited them to his account at the Tradesmen's National Bank in Oklahoma City, that they came back on April 16th, payment refused, "insufficient funds," that the checks were presented for payment at least three times, and later charged back against his account. That on April 25th he returned the checks to Mrs. Jenkins.

Mrs. R. J. Jenkins testified that she was bookkeeper for the Jenkins Motor Company, that Delbert Rhodes bought a Buick car and a Chevrolet car from them giving in payment the checks in question, which checks were indorsed to Wallace Campbell. That the checks were sent through for collection three times and came back marked "insufficient funds." That they phoned Mr. Rhodes about the checks and later he came and offered this Chevrolet car to take up the checks, but he did not have the title to the car, and Mr. Jenkins said, "I cannot give you back the checks until you get the title." Mr. Rhodes said the car belonged to C. H. Whittington, his brother-in-law, that he had sold it brand new to him and he knew the title was all right. That he came back the next day with the title and she went to Mr. Campbell, got the checks and brought them back. That Mr. Rhodes said the title was clear, and that she believed his statement with reference to there being no mortgage on the car. That they gave Mr. Rhodes the checks and took the car. Three days later Mr. Sullivan, of the Southern Bond & Investment Company of Chickasha,

phoned and said they had a mortgage on it, and Mr. Sullivan came and got the car. The certificate of title of C. H. Whittington, assignment of title from him to Delbert Rhodes, and reassignment of title by Delbert Rhodes to R. J. Jenkins were admitted in evidence.

As a witness in his own behalf, appellant, Delbert Rhodes, testified that in April of this year he was engaged in the automobile business in Mountain View, doing business with the First National Bank there. That on April 24th, he drove to Oklahoma City in Mr. Whittigton's car and tried to sell it. That on the way he stopped at Chickasha and talked with a big fellow in the office of the Southern Bond & Investment Company about their mortgage on the car. That Mr. Jenkins did not want to buy the car, but said he could get around $475 for it, and said, "If you will leave it here, we will sell it and pay off the mortgage, then we'll split the profit even and both make a little money." That he returned to Mountain View to see if Mr. Whittington would let him leave it, and had an understanding with Mr. Whittington to give him $30 to hold it up until we could sell the car, and that he would split any profit with Mr. Whittington after he got his half of it from Mr. Jenkins. He drove back to Oklahoma City with the title assigned by Mr. Whittington to him, and left the car with Mr. Jenkins; that he went with Mr. and Mrs. Jenkins to Chickasha to pay the Southern Bond & Investment Company. That, leaving Mrs. Jenkins in the car in front of the office, he went in with Mr. Jenkins; that the main fellow that was in the office the day before was not there. They drove him to the bus station and he caught the 2 o'clock bus out of Chickasha for home. That Mr. Jenkins was to call him by the time he got off the bus at Mountain View and let him know if the amount was what they said it was the day before, and Mr. Jenkins said, "If

I don't call you go ahead and give Mr. Whittington the $30;" that he waited until midnight, there was no call, so he gave Mr. Whittington the $30. That a few days later he went to California, returned within three weeks and was arrested at Hobart, by John Adams, deputy sheriff of Oklahoma county. That he did not receive any check or checks or anything from Mr. Jenkins.

Evidence was offered to prove that appellant was reputed in his home town to be a man of truth and veracity, which would not be admissible if objected to.

Evidence was also offered to prove that appellant was reputed to be a peaceable and law-abiding citizen.

In rebuttal, Mrs. Jenkins, recalled, testified that they never got the cars back that the checks were given in payment for, and that these were the identical checks she took up from Mr. Campbell April 25th that appellant took in payment for the Chevrolet automobile.

Bill Sullivan, recalled in rebuttal, testified that in looking for the car he went to Mountain View and learned from Doc Quinn that R. J. Jenkins at Oklahoma City had the car, and called him on the telephone and verified the fact that the car was there.

George H. Giddings, Jr., testified that as attorney for Mr. Jenkins he went with him to Mountain View to locate the two automobiles which appellant purchased and had given his checks in payment, and found that the cars had been sold by appellant in the course of business there. That they then went to Chickasha to see Mr. Sullivan of the Southern Bond & Investment Company relative to a mortgage which he had notified Mr. Jenkins was on the car in question; there he talked to Mr. Sullivan and examined the mortgage heretofore introduced in evidence, checked

the records, and told Mr. Jenkins to turn the car over to the Southern Bond & Investment Company.

At the close of the evidence appellant asked the court to advise the jury to return a verdict of not guilty on the grounds that there is a variance between the allegations of the information and the evidence, and that the evidence is insufficient to warrant a conviction, which request was denied.

It is contended in argument that there is a fatal variance between the allegations in the information and the proof in this, that appellant is charged with obtaining a check for $325, whereas the proof shows he obtained three checks in the aggregate sum of $325, and that the property so alleged to have been obtained was not sufficiently identified as to protect him from being again put in jeopardy for the same offense.

In our opinion there is no merit in this contention. To constitute the crime of obtaining property under false pretenses the essential elements are: A false statement of past or existing facts by one person to another with intent to defraud; such statement must be reasonably calculated to deceive that other. It must be so designed as to induce such other to part with his property, and such design must be accomplished, by means of the false pretenses made use of for that purpose.

It follows that the evidence must establish the obtaining of the property alleged in the information, or some part of it, that by such delivery the property passed out of the title, possession, and control of the accuser and into that of the accused, and proof of obtaining part of the property described will justify conviction.

12

In the case of Cotton v. State, 22 Okla. Cr. 252, 210 Pac. 739, it is said:

"A variance is a disagreement between the allegations in the information and the proof as to some matter which is legally essential to the charge, and which might subject the accused to another trial for the same offense." State v. Crean, 43 Mont. 47, 114 Pac. 603, Ann. Cas. 1912C, 424; Oats v. State, 153 Ind. 436, 55 N. E. 226; 8 Words and Phrases, First Series, 7283.

In Tiger v. State, 54 Okla. Cr. 202, 16 Pac. (2d) 889, 890, it is said:

"This court has followed the later sensible rule as stated in Woods v. State, 22 Okla. Cr. 365, 211 Pac. 519, and again asserted in Brashears et al. v. State, 38 Okla. Cr. 175, 259 Pac. 665. These later cases define a variance as an essential difference between the accusation and the proof and that a material variance arises only when there is such a difference between the proof and the charge that an acquittal of the defendant would be no bar to a further prosecution for the same offense."

In Woods v. State, supra, it is said:

"A variance is not material unless it is such as might mislead the defense, or expose the defendant to the injury of being put twice in jeopardy for the same offense."

In the case at bar, the variance had reference only to a matter of description of the property obtained under the false pretenses. The record clearly shows that the so-called variance could not have misled the defense, and there is nothing in the record which indicates any danger of appellant being subjected to another prosecution by reason of the fact that the evidence shows he received three checks instead of one. Fulkerson v. State, 17 Okla. Cr. 103, 189 Pac. 1092; Mason v. State, 23 Okla. Cr. 111, 212 Pac. 1028; French v. State, 37 Okla. Cr. 350, 259 Pac. 162; Hicks v.

State, 54 Okla. Cr. 431, 23 Pac. (2d) 219; Commonwealth v. Lee, 149 Mass. 179, 21 N. E. 299; Commonwealth v. Brown, 167 Mass. 144, 45 N. E. 1; Cunningham v. State, 61 N. J. Law, 666, 40 A. 696.

The next contention of appellant is that the court erred in refusing, at the close of the evidence, to advise the jury to render a verdict of acquittal on the ground that the evidence was insufficient to warrant a conviction. With this contention we cannot agree.

Our Criminal Code (St. 1931), § 3072, provides:

"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted, if the false pretense are expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, be in writing either subscribed by, or in the handwriting of the defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances."

In compliance with the foregoing rule in cases of this kind, the state called Mrs. Jenkins, who testified in corroboration of the testimony of the prosecuting witness, that she was present when appellant stated that the automobile in question was clear of all incumbrance, and that there was no mortgage on the same; and was present the following day when appellant again repeated said statements and transferred the title to the car by reassignment, that in the presence of her husband she delivered to appellant his three checks in the aggregate sum of $325, and that said checks had been received from appellant about two weeks before in payment of two cars bought by him

from her husband. It appears that all the circumstances of the transaction tend to corroborate the testimony of these two witnesses. The theory of the defense that appellant transferred the title of the car in question without receiving anything in payment therefor is based upon nothing except his own testimony.

It is often said that the law is confessedly tender of rights of persons accused of crime, but it is hardly subject to the charge of authorizing them to build up a theory of innocence upon fictitious or fraudulent assumptions.

The objection to the sufficiency of the evidence to support a conviction is untenable; its credibility was for the jury.

One of the grounds of the motion for a new trial is that, after the jury had returned into court a sealed verdict finding the defendant guilty of "obtaining money under false pretenses, as charged in the information," the court erred in directing the jury to retire to their jury room to correct their verdict by inserting the word "property" in place of the word "money" to conform to the allegations of the information. This being done over the objection of appellant.

Our Criminal Code provides, section 3089, St. 1931:

"If the jury agree on a verdict during a temporary adjournment or recess of the court, they may, upon the direction of the court, sign the verdict by their foreman, securely seal the same in an envelope, and deliver the same to the foreman, when they may separate until the next convening of the court, at which time they shall reassemble in the jury room and return their verdict in open court, when the same proceedings shall be had as in case of other verdicts."

Section 3100 provides:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

This verdict as first returned by the jury, using the word "money" instead of "property," could at best have been only an irregularity; it could only render the verdict defective in form, and it was clearly within the province of the court to direct the jury to retire and correct their verdict.

Upon careful consideration of the entire record, we are of opinion that appellant had a fair trial and has no just cause of complaint.

The judgment is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.