Homer Douglas KELLOGG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–755.

Court of Criminal Appeals of Oklahoma.

June 15, 1976.

Jack A. Mattingly, Seminole, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BLISS, Judge.

The Appellant, Homer Douglas Kellogg, hereinafter referred to as defendant was charged, tried before jury and convicted of the crime of Obtaining Property by False Pretenses in the District Court of Seminole County, Case No. CRF–73–152. Punishment was assessed at a term of eight (8) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the jury verdict, the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Charles Padgett testified that he was employed as a salesman and sales manager at Broadway Garage, Inc., in Seminole on the 6th day of August, 1973. On the day in question, the witness observed the defendant and Mr. Bryan, the owner of the Broadway Garage, on the used car lot evidently discussing the purchase of a 1972 Cadillac. Padgett did not hear the conversation while they were on the lot but he was in the office when Bryan signed title to the Cadillac over to the defendant and received the defendant's check for $4,767.63. The witness testified that the defendant did not state that the personal check was "bad" but Bryan and the defendant agreed that the defendant would return the next day and pick up the check in exchange for a cashier's check in the same amount. The witness further testified, "He was suppose to bring us a Cashier's Check the next morning for this check. In other words, he asked us to hold the check. He would bring us a Cashier's Check the next morning for the amount of the purchase." The defendant then left in the Cadillac which the witness never saw again. Padgett further stated that the defendant never returned with the Cashier's Check but called on numerous occasions during the next few days stating that he was tied up and that he couldn't get in with the check. Bryan held the personal check for four or five days before attempting to cash it. When an attempt was made to cash the check the witness discovered that there were and had been insufficient funds in the defendant's account and that the personal check required two (2) signatures. The witness then testified that he personally contacted the defendant who told him "that he'd been buying cars and trying to sell cars, and he had got cars and couldn't sell 'em and he got behind and he owed more than what the cars were worth, and that he had cars, not only in Oklahoma or in Texas, but was the same way that our car was, that he had given a check and it was'nt any good." Shortly thereafter the defendant paid $245.00 on the check. After it was determined that no further payments were forthcoming, charges were filed. Mr. Bryan died prior to trial.

The State then called Kenneth Lee King, President of the First State Bank in Noble, Oklahoma, who testified that at the time the defendant's personal check was written there were insufficient funds in the account to cover the check and that the signature authorization card required two (2) signatures. The State then rested.

The defendant then took the stand to testify in his own behalf stating that on the date in question he had a conversation with Mr. Bryan on the used car lot concerning the purchase of a Cadillac. The defendant told Bryan that he was "float-

ing" his checks and that the check wouldn't be any good at the time. Bryan then told him that he would hold the check and that he was to bring a Cashier's Check to replace it. The defendant subsequently paid $245.00 on the account. On cross-examination, defendant stated that upon delivery of the personal check he was given the title to the car and took actual possession of the vehicle. He further stated that he knew the check required two signatures and admitted that he had subsequently been convicted in Oklahoma and Texas on bogus check charges. The defense then rested.

Charles Padgett was then recalled as a rebuttal witness and on cross-examination stated that he did not know whether the defendant told Bryan that his personal check was bad or not. He further stated he made out the title and delivered it to the defendant pursuant to Bryan's instructions.

The defendant's brief, with merit, urges that the State failed to prove that the defendant was guilty of the specific crime of obtaining property by false pretenses by making and delivering a bogus check.

The information alleges that on the 6th day of August, 1973, the defendant:

"did unlawfully, wrongfully, willfully, fraudulently and feloniously obtain from one Broadway Garage, Inc., a 1972 Cadillac Coup DeVille, of the value of $4,767.63 by means of deception and false and fraudulent representations, statements, pretense, scheme, trick or device made and used by said defendant to swindle said Broadway Garage, Inc. That said defendant represented to Broadway Garage, Inc. that a certain check made payable to the Broadway Garage, Inc. dated August 6, 1973, in the amount of $4,767.63 and signed by the defendant was a good and valid check. That said Broadway Garage, Inc. relying on the aforesaid statements and devices made and used by said defendant and reposing trust and confidence in him, took the said check in said amount and applied it to the purchase price of said automobile. That the statements and representations made by defendant that said check was a good and valid check and that said defendant knew that said check was worthless at the time he wrote same. That the aforesaid false and fraudulent representations, statements, pretense, scheme and device were made and used by said defendant with the unlawful, willful, fraudulent and felonious intent then and there to deceive the said Broadway Garage, Inc. and to swindle, beat, cheat and defraud him out of said 1972 Cadillac Coupe De Ville."

In *Snider v. State,* Okl.Cr., 338 P.2d 892, we held that unless the giving of a check is the inducement for a change of possession of property, no offense has been committed under the bogus check act. An essential element of the crime of obtaining property under false pretenses is a false statement of a past or existing fact by one person to another with intent to defraud. *Rhodes v. State,* 58 Okl.Cr. 1, 49 P.2d 226. It is uncontroverted that the defendant promised to return the next day with a Cashier's Check and that Bryan stated he would hold the personal check. The only reasonable interpretation of the evidence presented at trial is that Bryan was induced to part with possession of the vehicle by the promise of the defendant to return with a Cashier's Check. It was obviously a poor way to conduct business but this Court must find that the specific crime charged, Obtaining Property by False Pretense, was not committed by the defendant. The judgment and sentence appealed from is REVERSED with direction to DISMISS as to the crime charged in the information.

BRETT, P. J., and BUSSEY, J., concur.